IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------ x
                                     :

NETRATINGS, INC.,
                                     :   Civil Action No. 05-cv-314-GMS
                Plaintiff,
                                   :
     vs.
                                   :   **DECLARATION OF**
COREMETRICS, INC.,                         **DR. BENJAMIN GOLDBERG**
                                   :
              Defendant.
                                   :
------------------------------------ x

I, BENJAMIN GOLDBERG, hereby declare as follows:

      1.      I am a tenured associate professor in the Department of Computer Science of the Courant Institute of Mathematical Sciences at New York University ("NYU"), in New York, New York.

      2.      I received my Ph.D. degree in computer science from Yale University, New Haven, Connecticut in 1988, and my Master of Science and Master of Philosophy degrees in computer science from Yale in 1984. My undergraduate degree from Williams College in 1982 was a Bachelor of Arts degree with highest honors in mathematical sciences.

      3.      I have published over 30 research papers in computer science – primarily in the areas of programming languages, compilers, and verification (ensuring the correctness of software). My research has received substantial funding from, among others, the National Science Foundation, the U.S. Department of Defense's Defense Advanced Research Projects Agency (DARPA), and the Office of Naval Research. I

have developed and/or taught graduate and undergraduate courses in programming languages, compilers, operating systems, computer architecture, algorithms, and object-oriented programming.

4. Additional information concerning the computer science courses that I have taught and my professional publications and presentations in the field of computer science are set forth in my current Curriculum Vitae, a copy of which is attached as Exhibit 1.

5. I have been retained by Plaintiff NetRatings, Inc. ("NetRatings") to serve as an expert in this matter, at my usual and customary rate of $375 per hour.

6. I have reviewed and analyzed the patents in suit (U.S. Patent Nos. 5,675,510 (the "'510 patent"); 6,115,680 (the "'680 patent"); 6,108,637 (the "'637 patent"); 6,138,155 (the "'155 patent"); and 6,763,386 (the "'386 patent")) and their prosecution histories. I have also reviewed the claim constructions proposed by each of the parties, the opening briefs, the intrinsic and extrinsic evidence cited by the parties in support of their proposed constructions, and the expert report provided by David Klausner.

7. In my opinion, a person of ordinary skill in the art in the 1995-1997 timeframe would have an undergraduate degree in Computer Science (or equivalent work experience) plus one or two years of work experience in computer programming.

8. In my opinion, one of ordinary skill in the art in the 1995-1997 timeframe who has examined the patents in suit, their prosecution histories, and the intrinsic and

extrinsic evidence cited by the parties, would agree with the claim constructions proposed by NetRatings, and not with the claim constructions proposed by Coremetrics.

9.  In my opinion, one of ordinary skill would understand "generating" in the context of the patents in suit to mean "creating". While it is a term of art in computer systems, generating has the same meaning that it has in ordinary usage. The creation of data occurs through computer calculations and the term generating is unrelated to where the created data may be stored. Data that a computer generates may subsequently be placed in various locations (e.g. in registers in the CPU, in RAM, on a network, etc.).

10. In my opinion, one of ordinary skill would understand "storing" in the context of the patents in suit to mean placed in computer memory or other storage device. While storing does imply that the data will be available for a subsequent use, the term does not imply that the data must stay permanently in the device. Furthermore, based on my examination of the patents in suit and their prosecution histories, I did not find that the patentee chose to narrow the definition of storing to imply the data has to be stored in a particular location (e.g., RAM, disk, etc.) or for a particular duration, except as otherwise specified in the claims themselves.

11. I understand that Coremetrics has asserted that "the tracking program in embedded in the Web page" and "the executable program not being part of the resource" are opposites of one another. I disagree with this assertion. A careful reading of the '155 and '386 patents, indicates that there is an area of overlap between these two descriptions – namely the case where a link to the tracking and/or executable program is contained in the web page being downloaded.

12. Upon reading the '155 and '386 patents, one of ordinary skill would understand the term "embedded" to mean "contained within or incorporated by reference". For example, Claim 3 of the '386 recites "the tracking program is embedded in the Web page". A corresponding description in the '386 specification is: "In order to achieve the above-described and other objects and advantages, a tracking program is embedded in a file which is downloaded from a server to a client. The tracking program need not originate from the same server that sent the file, and may be obtained, for example, via an embedded URL that points to a different server." [Col 4, ll. 47-52] The patent specification clearly shows that the tracking program of claim 3 that is "embedded" in a web page can either be contained in the web page itself or can referenced by a URL (link) in the web page. There are many further examples in the '386 patent specification of "embedding" as including incorporating by reference. In column 16, lines 32-34 of the '386 Patent, states,

> In particular, a Web page is requested by the client from Server A (S701). This Web page contains text, as well as embedded images which must be fetched from Server A (S702) and rendered (S705). In addition, the Web page contains embedded URLs that point to two resources on Server B. The first resource is a CGI script, which is embedded inside the Web page using the standard HTML <IMG> tag (S703). In attempting to render the Web page, the client will automatically fetch the resource on Server B, which will result in execution of a CGI script 1.

It is clear from this description that resources such as images and CGI scripts can be "embedded" in a web page by a reference within the page.

13. In order to understand the phrase "the executable program not being part of the resource" used in claim 1 of the '155 patent, I examined the patent specification and the other claims of the '155 patent. In the context of the patent, the executable

program may not be part of the resource but the resource can contain a link to obtain the executable program. The '155 patent specification describes exactly this scenario: "The tracking program need not originate from the same server that sent the file, and may be obtained, for example, via an embedded URL that points to a different server." [Col. 4, ll. 44-47]. Moreover, dependent Claims 29 and 30 of the '155 patent also support this interpretation. Because Claims 29 and 30 both depend from Claim 1, they must each have the limitation of "the executable program not being part of the resource". Claim 29 discloses that the executable program of Claim 1 is "locatable at a first address on a second server" and Claim 30 further discloses that "the resource" of Claim 1 "corresponds to a file" and that the "first address" of Claim 29 (i.e. where the executable program can be found on the second server) is "embedded in the file". Reading these claims, it would be immediately clear to one of ordinary skill that putting a reference, such as a link (i.e. a URL, which is a web address), to the executable program in a web page (which is a file) would satisfy the "the executable program not being part of the resource" limitation of Claim 1.

14.    I understand that Coremetrics' expert, David Klausner, has expressed his opinion that the term "characteristic" within the claims of the '637 Patent is "vague and indefinite" and that one of ordinary skill in the art would not be able to understand the meaning of the term as it is used in the claims of the '637 patent. I disagree with Mr. Klausner's opinions. In my opinion, the term "characteristic" is neither vague nor indefinite and one of ordinary skill in the art would readily understand the meaning of the term as it is used in the claims of the '637 patent.

15. In my opinion, the term "instructions" as used in the claims of the '637 are computer statements to be executed by a CPU or other form of microprocessor. These instructions are distinct from other mechanisms such as 1) custom semiconductor chips and 2) manual steps performed by a person.

16. I have examined the means-plus-function claim elements of the '637 Patent and I agree with NetRatings' identification of the function and structure for those means-plus-function claim elements. Based on my review of the patent, the specification is more than sufficient in its description of the corresponding structure for the means-plus-function claim elements, and includes but is not limited to computer programs such as a Java applet. The description of the Java applet provided in the '637 patent specification is sufficient to allow one of ordinary skill to build the monitoring system claimed in the '637 patent.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on May 14, 2006.

_____
Dr. Benjamin Goldberg