# TAB H

◯                    ◯

Serial No.    08/973,173            -2-
Tech. Center  2857

1.    This application currently names joint inventors. In considering patentability of the claims under 35 U.S.C. 103(a), the Examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order or the Examiner to consider the applicability of 35 U.S.C. 103(e) and potential 35 U.S.C. 102(f) or (g) prior art under 35 U.S.C. 103(a).

2.    The following is a quotation of the appropriate paragraphs of 35 U.S.C. § 102 that form the basis for the rejections under this section made in this Office action:

> *A person shall be entitled to a patent unless —*
> *(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.*

3.    Claims 1-5, 10, 19, 20 and 22 are rejected under 35 U.S.C. § 102(b) as being anticipated by Hecht *et al.* (5,032,979).

Hecht *et al.* discloses a plurality of use meters in client processors [222] and [333], loading logs of predetermined machine operations into computer memory, an audit program installed in a server [444] loading a log of predetermined machine operations in computer memory, the auditing program accessing, processing, and generating reports based on stored machine operations, each audit program being linked to the client processors.

More particularly with respect to claims 2 and 3, clearly the remote mount of Hecht *et al.* (see figure 2) comprises an electronic communication channel.

More particularly with respect to claim 4, said claim is directed towards establishing communication on a periodic basis. Hecht *et al.* discloses an auditing system which periodically initiates audits, creating a communication between the server and client.

As to claim 5, said claim is directed towards transferring data at periodic times based upon available memory. Hecht *et al.* discloses in column 11, starting in line 48 that managing of workstation audit files are dependent upon available storage space, "*If we have just a small work station with not much disk space ...it will fill up after a while and we have to manage it on a hourly or weekly basis.*"

NR-CORE000894



Serial No.     08/973,173          -3-
Tech. Center   2857

4.     Claims 1, 2, 10, 19, 20 and 22 are rejected under 35 U.S.C. § 102(b) as being anticipated by Shear (4,827,508).

Shear discloses a plurality of use meters in client processors (see abstract), loading logs of predetermined machine operations into computer memory, an audit program installed in a server [416] loading a log of predetermined machine operations in computer memory, the auditing program accessing, processing, and generating reports based on stored machine operations, each audit program being linked to the client processors.

More particularly with respect to claim 2, clearly the remote mount of Shear [200] comprises an electronic communication channel.

5.     The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> *A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.*

6.     Claims 6-9 and 11-18 are rejected under 35 U.S.C. 103 as being unpatentable over Hecht *et al.*

As to claims 6 and 16, said claims are directed towards transferring auditing data via portable magnetic media. Because the device of Hecht *et al.* is directed to transfer of digital data, and because portable magnetic media is a known method of transferring digital data (i.e. manual data transfer, so-called "sneakernet"), it would have been obvious for one of ordinary skill in the art at the time the invention was made to substitute one known data transfer means for another, each performing similar functions in similar ways so as to receive the obvious benefits derived therefrom such as enhanced system flexibility.

NR-CORE000895



Serial No.    08/973,173                    -4-
Tech. Center  2857

More particularly with respect to claims 7, 8, 17, and 18, said claims are directed towards logging operation system call back messages and intercepted modem character string events. Such events are clearly within the definition of, "...*events which are relevant to the maintenance of the security of the system...*", as disclosed by Hecht *et al.* in the abstract.

More particularly with respect to claims 9 and 11, said claims are directed to the use of a dictionary file for  :eting logged events. Hecht *et al.* is directed towards the auditing of security logs. The ing of Hecht *et al.* clearly comprises a dictionary file, the Examiner notes the auditing of Hecht *et al.* comprising audit file filtering as disclosed in column 20 starting in line 40.

More particularly with respect to claim 12, said claim is directed towards the use of an electronic communication channel for data transfer. Clearly the network of Hecht *et al.* comprises an electronic channel.

More particularly with respect to claim 13, said claim is directed towards transferring log files based upon predetermined criteria. Hecht *et al.* discloses an auditing system which periodically initiates audits, creating a communication between the server and client. Clearly such periodic audits utilizing a network protocol constitutes such transference.

More particularly with respect to claim 14, said claim is directed towards establishing communication on a periodic basis. Hecht *et al.* discloses an auditing system which periodically initiates audits, creating a communication between the server and client.

As to claim 15, said claim is directed towards transferring data at periodic times based upon available memory. Hecht *et al.* discloses in column 11, starting in line 48 that managing of workstation audit files are dependent upon available storage space, "*If we have just a small work station with not much disk space ...it will fill up after a while and we have to manage it on a hourly or weekly basis.*"

NR-CORE000896



Serial No.    08/973,173                    -5-
Tech. Center  2857

7.      Claims 21 and 23-25 are objected to as being dependent upon a rejected base claim, but
would be allowable if rewritten in independent form including all of the limitations of the base
claim and any intervening claims or if said rejection(s) were overcome.

The Examiner notes that the prior art of record neither discloses nor fairly suggest any of;
auditing a display wherein the application is an online service interface program and the active
display elements titles are logged; auditing a display to extract edit box information utilizing a
predetermined syntax, particularly a URL syntax; or, eavesdropping on operating system
messages and indicating receipt of predetermined types of messages.

8.      Any inquiry concerning this communication or earlier communications from the Examiner
should be directed to Craig Steven Miller whose telephone number is (703) 305-9730. Art Unit
facsimile services are now available at (703) 308-7722.
The Examiner can normally be reached on Mondays-Friday from 07:15am-3:45pm EDT.
Should repeated attempts to reach the Examiner be unsuccessful, the Examiner's Supervisor, Marc
Hoff may be reached at (703) 308-1677.
Any inquiry of a general nature or relating to the status of this application should be
directed to the Group receptionist whose telephone number is (703) 305-4700.

Craig Steven Miller (ss)
17 June 1999

Marc S. Hoff
Supervisory Primary Examiner

# **TAB I**



GIPU-2857 #11/A
10-2-99
Roberto
amdt

MMI 202 - NDH/RSMG

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to Assistant Commissioner for Patents, Washington, D.C. 20231 on 9/22/99

Paul Kontopoulos
_Lani Kontopoulos_          9/22/99
Signature                    Date

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicants | : | Steven R. COFFEY et al. |
| Serial No. | : | 08/973,173 |
| Filed | : | March 2, 1998 |
| For | : | COMPUTER USE METER AND ANALYZER |
| Art Unit | : | 2857 |
| Examiner | : | C. Miller |

Hon. Commissioner of Patents                            September 22, 1999
 and Trademarks
Washington, D.C. 20231

### RESPONSE UNDER 37 C.F.R. § 1.111

SIR:

This is in response to the Office Action of June 22, 1999.

### IN THE CLAIMS

Please amend the claims as follows:

1.    (Amended)  A computer use monitoring system comprising:

TC 2800 MAIL ROOM    SEP 29 1999    RECEIVED

601151.1                                1

NR-CORE001027

JA00100

**MMI 202 - NDH/RSMG**

a plurality of local computer use meters installed in user computer machines, each including a log of predetermined machine operation events stored in memory of said computer machines;

a processing station installed in a computer machine which loads a log of predetermined machine operation events into computer memory so as to log internet addresses of content and associated display titles;

a database management system installed in a computer machine configured to access, process and generate reports based on the machine operation events stored in said computer memory;

wherein said processing station is linked to said plurality of local computer use meters.

10.    (Amended) A computer use monitoring method comprising the steps of:

eavesdropping on operating system messages and indicating receipt of predetermined types of messages responsive to an operating system messaging module;

creating and storing an event log responsive to selected operating system messages in order to log internet addresses of content and associated display titles;

transferring one or more event logs from one or more computer systems to a central system; and

analyzing the contents of said event logs.

11.    (Amended)  A method for determining the nature of computer use by a plurality of computer systems comprising the steps of:

generating a log of machine operation events in each of a plurality of user computer systems;

storing each of the events in said log in the local computer memory of said user computer systems so as to log internet addresses of content and associated display titles;

601158.1                                                2

NR-CORE001028

JA00101

**MMI 202 - NDH/RSMG**

transferring said stored events from said plurality of user computer systems to a processing station computer;

loading said event logs into memory associated with said processing station computer;

interpreting said event logs by reference to a dictionary stored in memory associated with said processing station computer; and

compiling and reporting said interpreted computer event logs according to specified criteria.

19.    (Amended) A computer use monitoring method comprising the steps of:

periodically auditing information displayed on a computer monitor for information relating at least to the logging of internet addresses of content and associated display titles; and creating and storing a log of labels indicative of usage activity.

## REMARKS

The Applicants thank the Examiner for including notations regarding the prior art of record in the present Office Action.

Independent claims 1, 10, 11, and 19 were amended so as to further define the present invention. Support for the new recitations within the amended claims may be found on page 3, line 13 to page 4, line 27 of the specification. As such, no new matter has been added.

Claims 1-5, 10, 19, 20, and 22 stand rejected under 35 U.S.C. § 102(b) as being anticipated by Hecht et al; claims 1, 2, 10, 19, 20, and 22 are rejected under 35 U.S.C. § 102(b) as being anticipated by Shear; and also, the Examiner has further rejected claims 1, 2, 3, 4, 5, 10, 19, 20, and 22 under 35 U.S.C. § 102 (b) as being anticipated by Hecht et al. and Shear.

Furthermore, claims 6-9 and 11-18 stand rejected under 35 U.S.C. § 103 as being unpatentable over Hecht et al, while claims 21 and 23-25 are each objected to as being dependent upon a rejected base claim, but were deemed allowable if rewritten in independent

601158.1

3

**MMI 202 - NDH/RSMG**

form including all of the limitations of the base claim and any intervening claims or if said rejection(s) were overcome.

It is respectfully maintained that, with respect to Hecht et al. and Shear, whether cited alone or in combination, the presently claimed invention, unlike either cited teaching is directed (*inter alia*), to steps involving the logging of internet addresses of content and associated display titles. This is in direct contrast to both Hecht et al. and Shear, neither of which teaches or suggests the logging internet addresses and display titles. As such, it is believed that the presently rejected (and correspondingly objected) claims are now in place for allowance.

An early and favorable response is earnestly solicited.

Applicants believe that no fee is required for filing this amendment, however, should this not be the case the Commissioner is hereby authorized to deduct any fees associated with this filing from Deposit Account No. 500624.

Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.

By_____
    Robert S.M. Gorman
    Reg. No. 41,790

666 Fifth Avenue
New York, New York 10103
(212) 318-3000

60115R.1

4

# TAB J



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:  COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/973,173 | 03/02/98 | COFFEY | S | 317.111 |

MM42/1203

ROBERT S M GORMAN
FULBRIGHT & JAWORSKI
666 FIFTH AVENUE
NEW YORK NY 10103

| EXAMINER |
|---|
| MILLER,C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2857 | 12 |

DATE MAILED:  12/03/99

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)

NR-CORE001032

JA00104

**Office Action Summary**

| Application No. | Applicant(s) |
|---|---|
| 08/973,173 | Coffey et al. |
| Examiner | Group Art Unit |
| Craig Steven M16 | 2857 |

―*The MAILING DATE of this communication appears on the cover sheet beneath the correspondence address*―

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE _____3_____ MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, such period by default, expire SIX (6) MONTHS from the mailing date of this communication..
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).

**Status**

☑ Responsive to communication(s) filed on 27 September 1995

☑ This action is FINAL.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

**Disposition of Claims**

☑ Claim(s) ~~1 to a~~ 1-25 is/are pending in the application.

Of the above claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☑ Claim(s) 1-20 and 22 is/are rejected.

☑ Claim(s) 21 and 23-25 is/are objected to.

☐ Claim(s) _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119 (a)-(d)**

☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

  ☐ All ☐ Some* ☐ None   of the CERTIFIED copies of the priority documents have been

  ☐ received.

  ☐ received in Application No. (Series Code/Serial Number) _____

  ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

  *Certified copies not received: _____

**Attachment(s)**

☑ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____       ☐ Interview Summary, PTO-413

☑ Notice of Reference(s) Cited, PTO-892                                        ☐ Notice of Informal Patent Application, PTO-152

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948                       ☐ Other _____

**Office Action Summary**

U. S. Patent and Trademark Office
PTO-326 (Rev. 9-97)

Part of Paper No. 12

NR-CORE001033

JA00105

Serial No.     08/973,173                    -2-
Tech. Center  2857

1.     The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.

2.     Claims 1-19, 20 and 22 are rejected under 35 U.S.C. 103 as being unpatentable over Hecht *et al.* (5,032,979) in view of Johnson *et al.* (5,878,384).

As to claims 6 and 16, said claims are directed towards transferring auditing data via portable magnetic media. Because the device of Hecht *et al.* is directed to transfer of digital data, and because portable magnetic media is a known method of transferring digital data (i.e. manual data transfer, so-called "sneakernet"), it would have been obvious for one of ordinary skill in the art at the time the invention was made to substitute one known data transfer means for another, each performing similar functions in similar ways so as to receive the obvious benefits derived therefrom such as enhanced system flexibility.

·    More particularly with respect to claims 7, 8, 17, and 18, said claims are directed towards logging operation system call back messages and intercepted modem character string events. Such events are clearly within the definition of, "*...events which are relevant to the maintenance of the security of the system...*", as disclosed by Hecht *et al.* in the abstract.

More particularly with respect to claim 9, said claim is directed to the use of a dictionary file for interpreting logged events. Hecht *et al.* is directed towards the auditing of security logs. The auditing of Hecht *et al.* clearly comprises a dictionary file, the Examiner notes the auditing of Hecht *et al.* comprising audit file filtering as disclosed in column 20 starting in line 40.

With respect to claim 11, said claim is directed to the use of a dictionary file for interpreting logged events. Hecht *et al.* is directed towards the auditing of security logs. Hecht *et al.* discloses the instant invention as claimed with the exception that Hecht *et al.* does not specify that internet URLs should be monitored. The auditing of Hecht *et al.* clearly comprises a dictionary file, the Examiner notes the auditing of Hecht *et al.* comprising audit file filtering as disclosed in column 20 starting in line 40. Johnson *et al.* discloses in col. 6 starting in line 19 that, "*...the URL information is captured as a string of ASCII text.*" Because the devices of Hecht *et al.* and Johnson *et al.* are both within the art of monitoring computer use and because

NR-CORE001034

JA00106

Serial No.    08/973,173              -3-
Tech. Center  2857

Johnson *et al.* discloses that such URL information should be monitored, it would have been obvious to one of ordinary skill in the art at the time the invention was made to include within the device of Hecht *et al.* the monitoring of internet URL so as to receive the obvious benefits derived therefrom such as monitoring the well known use of computers on the internet.

More particularly with respect to claim 12, said claim is directed towards the use of an electronic communication channel for data transfer. Clearly the network of Hecht *et al.* comprises an electronic channel.

More particularly with respect to claim 13, said claim is directed towards transferring log files based upon predetermined criteria. Hecht *et al.* discloses an auditing system which periodically initiates audits, creating a communication between the server and client. Clearly such periodic audits utilizing a network protocol constitutes such transference.

More particularly with respect to claim 14, said claim is directed towards establishing communication on a periodic basis. Hecht *et al.* discloses an auditing system which periodically initiates audits, creating a communication between the server and client.

As to claim 15, said claim is directed towards transferring data at periodic times based upon available memory. Hecht *et al.* discloses in column 11, starting in line 48 that managing of workstation audit files are dependent upon available storage space, "*If we have just a small work station with not much disk space …it will fill up after a while and we have to manage it on a hourly or weekly basis.*"

As to claims 1, 10, 19, 20 and 22, Hecht *et al.* discloses the instant invention as claimed with the exception that Hecht *et al.* does not specify that a internet URLs should be logged. Hecht *et al.* discloses a plurality of use meters in client processors (222) and (333), loading logs of predetermined machine operations into computer memory, an audit program installed in a server (444) loading a log of predetermined machine operations in computer memory, the auditing program accessing, processing, and generating reports based on stored machine operations, each audit program being linked to the client processors. Johnson *et al.* discloses in col. 6 starting in line 19 that, "*…the URL information is captured as a string of ASCII text.*" Because the devices of Hecht *et al.* and Johnson *et al.* are both within the art of monitoring computer use and because

NR-CORE001035

Serial No.    08/973,173                    -4-
Tech. Center  2857

Johnson *et al.* discloses that such URL information should be monitored, it would have been obvious to one of ordinary skill in the art at the time the invention was made to include within the device of Hecht *et al.* the monitoring of internet URL so as to receive the obvious benefits derived therefrom such as monitoring the well known use of computers on the internet.

More particularly with respect to claims 2 and 3, clearly the remote mount of Hecht *et al.* (see figure 2) comprises an electronic communication channel.

More particularly with respect to claim 4, said claim is directed towards establishing communication on a periodic basis. Hecht *et al.* discloses an auditing system which periodically initiates audits, creating a communication between the server and client.

As to claim 5, said claim is directed towards transferring data at periodic times based upon available memory. Hecht *et al.* discloses in column 11, starting in line 48 that managing of workstation audit files are dependent upon available storage space, "*If we have just a small work station with not much disk space ...it will fill up after a while and we have to manage it on a hourly or weekly basis.*"

3.    Claims 1, 2, 10, 19, 20 and 22 are rejected under 35 U.S.C. 103 as being unpatentable over Shear (4,827,508) in view of Johnson *et al.*

Shear discloses the instant invention as claimed with the exception that Shear does not specify that internet URLs should be monitored. Shear discloses a plurality of use meters in client processors (see abstract), loading logs of predetermined machine operations into computer memory, an audit program installed in a server (416) loading a log of predetermined machine operations in computer memory, the auditing program accessing, processing, and generating reports based on stored machine operations, each audit program being linked to the client processors. Johnson *et al.* discloses in col. 6 starting in line 19 that, "*...the URL information is captured as a string of ASCII text.*" Because the devices of Shear and Johnson *et al.* are both within the art of monitoring computer use and because Johnson *et al.* discloses that such URL information should be monitored, it would have been obvious to one of ordinary skill in the art at

NR-CORE001036

Serial No.    08/973,173                -5-
Tech. Center  2857

the time the invention was made to include within the device of Shear the monitoring of internet
URL so as to receive the obvious benefits derived therefrom such as monitoring the well known
use of computers on the internet.

More particularly with respect to claim 2, clearly the remote mount of Shear [200]
comprises an electronic communication channel.

4.    Claims 21 and 23-25 are objected to as being dependent upon a rejected base claim, but
would be allowable if rewritten in independent form including all of the limitations of the base
claim and any intervening claims or if said rejection(s) were overcome.

The Examiner notes that the prior art of record neither discloses nor fairly suggest any of;
auditing a display wherein the application is an online service interface program and the active
display elements titles are logged; auditing a display to extract edit box information utilizing a
predetermined syntax, particularly a URL syntax; or, eavesdropping on operating *system*
messages and indicating receipt of predetermined types of messages.

5.    Applicant's arguments have been considered but are moot in view of the new grounds of
rejection.

6.    Applicant's amendment necessitated the new ground(s) of rejection presented in the Office
action. Accordingly, **THIS ACTION IS MADE FINAL.** See MPEP § 706.07(a). Applicant is
reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for response to this final action is set to expire THREE
MONTHS from the date of this action. In the event a first response is filed within TWO
MONTHS of the mailing date of this final action and the advisory action is not mailed until after
the end of the THREE-MONTH shortened statutory period, then the shortened statutory period
will expire on the date the advisory action is mailed, and any extension fee pursuant to 37
CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event will the
statutory period for response expire later than SIX MONTHS from the date of this final action.

NR-CORE001037

Serial No.    08/973,173              -6-
Tech. Center  2857

7.    Any inquiry concerning this communication or earlier communications from the Examiner should be directed to Craig Steven Miller whose telephone number is (703) 305-9730. Art Unit facsimile services are now available at (703) 308-7722.

The Examiner can normally be reached on Mondays-Friday from 07:15am-3:45pm EDT. Should repeated attempts to reach the Examiner be unsuccessful, the Examiner's Supervisor, Marc Hoff may be reached at (703) 308-1677.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 305-4700.

Craig Steven Miller (ss)
01 December 1999

MARC S. HOFF
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2800

NR-CORE001038

JA00110

**Notice of References Cited**

| Application No. | Applicant(s) |
|---|---|
| 08/973,173 | Coffey et al. |
| Examiner | Group Art Unit | Page 1 of 1 |
| Craig Steven Miller | 2887 | |

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| | A | 5,878,384 | 3/99 | Johnson et al. | 702 | 187 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|---|
| | N | | | | | | |
| | O | | | | | | |
| | P | | | | | | |
| | Q | | | | | | |
| | R | | | | | | |
| | S | | | | | | |
| | T | | | | | | |

## NON-PATENT DOCUMENTS

| * | | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|---|
| | U | | |
| | V | | |
| | W | | |
| | X | | |

NR-CORE001039

JA00111

# TAB K

JAN 14 2000 10:51 FR FULBRIGHT&JAWORSKI 24          TO 0193332702805170 P.01/22

MMI 202.1 - PFF/CAT 14/B

FAX COPY RECEIVED

JAN 1 4 2000

TECHNOLOGY CENTER 2800

Certificate of Transmission

I hereby certify that this correspondence is being facsimile transmitted
to the United States Patent and Trademark Office, Fax No. (703) 308-
5841 on January 14, 2000.

Gisele Richardson          _____
(Print Name)                    (Signature)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicants | : | Steven R. COFFEY et al. |
| Serial No. | : | CPA of 08/973,173 |
| Filed | : | Herewith |
| For | : | COMPUTER USE METER AND ANALYZER |
| Art Unit | : | 2857 |
| Examiner | : | C. Miller |

January 14, 2000

Hon. Commissioner of Patents
and Trademarks
Washington, D.C. 20231

### PRELIMINARY AMENDMENT

SIR:

Before the issuance of the first Office Action in this continued prosecution application

(CPA), and responsive to the Office Action dated December 3, 1999, which issued with respect

to the parent of this continuation, please amend the above-identified continuation as follows:

625392.1

NR-CORE001055

JA00112

## IN THE SPECIFICATION:

Page 1, prior to line 1, add

—Related Application

.This application is a ~~continuation of pending U.S. patent application Serial No.~~ ~~08/973,173; which was the~~ National Stage of International Application No. PCT/US96/10091, filed June 7, 1996, which *is a continuation of* ~~claims benefit of priority from~~ U.S. patent application Serial No. 08/474,082, filed June 7, 1995, now U.S. Patent No. 5,675,510, and are incorporated by reference in their entirety.—

## IN THE CLAIMS:

Please cancel claims 1-25 without prejudice and add the following new claims:

—26.   A monitoring system, comprising:

a plurality of local computer use meters installed in user computer machines, each user meter including a log of predetermined events stored in an associated user computer machine, wherein said log of predetermined events identifies character strings reflecting on-line activity;

a central processing station which receives and stores said log of predetermined events from said plurality of computer use meters;

a database management system for accessing, processing and generating reports based on the stored predetermined events; and

wherein said processing station is linked to said plurality of computer use meters.—

—27.   The monitoring system of claim 26, wherein said character strings represents a URL

625592.1                                    -2-

NR-CORE001056

JA00113

address on the world wide web.--

28.  The monitoring system of claim 26, wherein said central processing station receives said log of predetermined events over an electronic communication channel.--

29.  The monitoring system of claim 26, wherein said each user meter logs applications running on said associated user computer machine.--

30.  The monitoring system of claim 29, wherein said each user meter logs the launching and termination of application on said associated user computer machine.--

31.  The monitoring system of claim 30, wherein said each user meter logs the switching resources from one application to another, the minimizing an application and the restoring an application on said associated user computer machine.--

32.  The monitoring system of claim 27, wherein said each user meter logs at least date and time information with each predetermined events stored in said associated user computer machine to provide web traffic statistical information.--

33.  The monitoring system of claim 26, wherein said each user meter includes a timer to periodically audit information displayed on said associated user computer machine.--

G25592.1

-3-

NR-CORE001057

JA00114

9

~34. The monitoring system of claim 26, wherein said each user meter includes a timer to periodically audit information requested by said associated user computer machine.--

10

~35. The monitoring system of claim 26, wherein said each user meter compresses said log of predetermined events and stores said compressed log of predetermined events in said associated user machine.--

11

~36. The monitoring system of claim 26, wherein said each user meter encrypts said log of predetermined events and wherein said central processing station receives said encrypted log of predetermined events from said plurality of computer use meters--

12

~37. A monitoring method, comprising the steps of:

logging predetermined events by a plurality of local computer use meters installed in user computer machines, wherein said log of predetermined events identifies character strings reflecting on-line activity;

storing said log of predetermined events by each use meter in an associated user computer machine;

receiving and storing said log of predetermined events by a central processing station from said plurality of computer use meters;

accessing, processing and generating reports based on the stored predetermined events by a database management system; and

wherein said processing station is linked to said plurality of computer use meters.--

625392.1                                -4-

NR-CORE001058

JA00115

JAN 14 2000 18:52 FR FULBRIGHT&JAWORSKI 24          TO 0193309702805170 P.11/22

--38.  The monitoring method of claim 37, wherein said character strings represents a URL address on the world wide web.--

--39.  The monitoring method of claim 37, wherein the step of receiving and storing receives said log of predetermined events over an electronic communication channel.--

--40.  The monitoring method of claim 37, wherein the step of logging logs applications running on said associated user computer machine.--

--41.  The monitoring method of claim 40, wherein the step of logging logs the launching and termination of application on said associated user computer machine.--

--42.  The monitoring method of claim 41, wherein the step of logging logs the switching resources from one application to another, the minimizing an application and the restoring an application on said associated user computer machine.--

--43.  The monitoring method of claim 38, wherein the step of logging logs at least date and time information with each predetermined events stored in said associated user computer machine to provide web traffic statistical information.--

--44.  The monitoring method of claim 37, further comprising the step of periodically auditing

625592.1                                              -5-

NR-CORE001059

JA00116

JAN 14 2000 10:52 FR FULBRIGHT&JAWORSKI 24         TO 0193309702805170 P.12/22

information displayed on said associated user computer machine.—

45. The monitoring method of claim 37, further comprising the step of periodically auditing information requested by said associated user computer machine.--

46. The monitoring method of claim 37, wherein the step of logging includes the step of compressing said log of predetermined events; and wherein the step of storing stores said compressed log of predetermined events in said associated user machine.--

47. The monitoring method of claim 37, wherein the step of logging includes the step of encrypting said log of predetermined events.--

48. The monitoring method of claim 37, further comprising the step of eavesdropping on operating system messages and indicating the receipt of predetermined types of messages responsive to an operating system module.--

## REMARKS

In parent application Serial No. 973,173, filed March 2, 1998, an Office Action dated December 3, 1999 issued and the following remarks are provided in response to that Office Action.

Claims 1-25 have been canceled and new claims 26-48 have been added. Accordingly,

625592.1

-6-

NR-CORE001060

claims 26-48 are presented for consideration.

In light of the above amendments and remarks to follow, reconsideration and allowance of this application are requested.

Applicants' undersigned attorneys appreciate the opportunity afforded by the Examiner to discuss the parent case and his kind offer to expedite the processing and handling of this continuation application by the Examiner.

Claims 1-20 and 22 have been rejected under 35 U.S.C. §103 as being unpatentable over U.S. Patent 5,032,979 (Hecht et al.) in view of U.S. Patent 5,878,384 (Johnson et al.) and claims 1,2, 10, 19, 20 and 22 also have been rejected under 35 U.S.C. §103 as being unpatentable over U.S. Patent 4,827,508 (Shear) in view of Johnson et al. To expedite the prosecution of this application, claims 1-25 have been rewritten as new claims 26-48, and this rejection will be construed as if it applies to new claims 26-48.

The present application is entitled to a priority filing date of June 7, 1995, the date on which the parent application Serial No. 08/474,082, now U.S. Patent 5,675,510 (Coffey et al.), was filed, in accordance with the provisions of 35 U.S.C. §1.119. It is noted that the Johnson et al. patent, relied upon by the Examiner in rejecting claims 1-20 and 22 is entitled to a U.S. filing date of March 29, 1996. Thus, the effective filing date of the instant application antedates the March 29, 1996 filing date of the Johnson et al. patent. In view of the earlier effective filing date

NR-CORE001061

JA00118

of the present application, the Johnson et al. reference is not available as prior art against the rejected claims hereof, all of which find support in applicants' parent case. (This is detailed infra.) It is therefore requested that this reference be removed and that claims 26-48 be allowed.

However, applicants do not admit either expressly or impliedly, that the disclosure of Johnson et al. anticipates or renders obvious applicant's claimed invention.

Claim 1 has been canceled and is replaced by new claim 26 which identifies the log of predetermined events as "character strings reflecting on-line activity". Support for the recitations of claim 26 is set forth from page 3, line 24 to page 4, line 4, and page 7, line 16 to page 8, line 10 of the specification (or Coffey et al., column 2, lines 34-49; column 4, lines 20-51). Accordingly, it is respectfully submitted that claim 26 is patentably distinct over Hecht et al. and Shear for the reasons given in the Amendment filed on September 27, 1999.

New claim 27 depends from claim 26 and additionally states that the character string represents a URL address on the world wide web. Support for the recitations of claim 27 is set forth at page 3, lines 27-33 of the specification (or Coffey et al., column 2, lines 38-45). The allowance of claim 27 is solicited for the reasons given above with respect to claim 26.

New claim 28 depends from claim 26 and recites substantially same subject matter as original claim 2, now canceled. The allowance of claim 28 is solicited for reasons given above with respect to claim 26.

625592.1                          -8-

NR-CORE001062

JA00119

New claim 29 depends from claim 26 and additionally states that each use meter logs applications running on the user computer machine. Support for the recitations of claim 29 is set forth at page 2, lines 18-24; page 12, lines 19-28; page 13, line 13-26 of the specification (or Coffey et al., column 1, lines 57-64; column 7, lines 13-23; column 8, lines 16-29). The allowance of claim 29 is solicited for the reasons given above with respect to claim 26.

New claim 30 depends from claim 29 and additionally states that each use meter logs the launching and termination of application on the user computer machine. Support for the recitations of claim 30 is set forth at page 2, lines 20-22; page 11, line 18 to page 12, line 1; page 12, lines 12-19; page 13, line 13-26 of the specification (or Coffey et al., column 1, lines 60-61; column 6, lines 39-58; column 7, lines 5-13; column 8, line 16-29). The allowance of claim 30 is solicited for the reasons given above with respect to claim 29.

New claim 31 depends from claim 30 and additionally states that each use meter logs the switching resources from one applications to another, the minimizing an application and the restoring an application on the user computer machine. Support for the recitations of claim 31 is set forth at page 2, lines 22-24; page 12, lines 1-11; page 13, line 13-26 of the specification (or Coffey et al., column 1, lines 61-63; column 6, line 58 to column 7, line 4; column 8, line 16-29). The allowance of claim 31 is solicited for the reasons given above with respect to claim 30.

New claim 32 depends from claim 30 and additionally states that each use meter logs date and time information with each predetermined events. Support for the recitations of claim 32 is

NR-CORE001063

JA00120

set forth from page 2, line 27 to page 3, line 4; page 3, lines 19-23; page 3, line 33 to page 4, line 4; page 14, line 1 to page 16, line 9 of the specification (or Coffey et al., column 2, lines 1-11, lines 28-33 and lines 45-50; table in columns 7-10). The allowance of claim 32 is solicited for the reasons given above with respect to claim 30.

New claim 33 depends from claim 26 and partially recites substantially same subject matter as conditionally allowed claim 21, now canceled. Particularly, claim 33 states that each use meter includes a timer to periodically audit information displayed on the user machine. The allowance of claim 33 is solicited for the reasons given above with respect to claim 26 and for the same reasons as canceled claim 21.

New claim 34 depends from claim 26 and partially recites substantially same subject matter as conditionally allowed claim 21, now canceled. Particularly, claim 34 states that each use meter includes a timer to periodically audit information requested by the user machine. The allowance of claim 34 is solicited for the reasons given above with respect to claim 26 and for the same reasons as canceled claim 21.

New claim 35 depends from claim 26 and additionally states that each use meter compresses the log of predetermined events. Support for the recitations of claim 35 is set forth at page 5, lines 1-4; page 8, lines 15-16 of the specification (or Coffey et al., column 2, lines 57-61; column 4, lines 57-59). The allowance of claim 35 is solicited for the reasons given above with respect to claim 26.

625592.1                        -10-

NR-CORE001064

JA00121

New claim 36 depends from claim 26 and additionally states that each use meter encrypts the log of predetermined events. Support for the recitations of claim 36 is set forth at page5, lines 1-4 of the specification (or Coffey et al., column 2, lines 57-61). The allowance of claim 36 is solicited for the reasons given above with respect to claim 26.

New claim 37 is a method claim and recites the steps of performing those function which are carried out by means of system claim 26. The allowance of claim 37 is solicited for the reasons given above with respect to claim 26.

New claim 38 is a method claim and recites the steps of performing those function which are carried out by means of system claim 27. The allowance of claim 38 is solicited for the reasons given above with respect to claim 27.

New claim 39 is a method claim and recites the steps of performing those function which are carried out by means of system claim 28. The allowance of claim 39 is solicited for the reasons given above with respect to claim 28.

New claim 40 is a method claim and recites the steps of performing those function which are carried out by means of system claim 29. The allowance of claim 40 is solicited for the reasons given above with respect to claim 29.

NR-CORE001065

JA00122

New claim 41 is a method claim and recites the steps of performing those function which are carried out by means of system claim 30. The allowance of claim 41 is solicited for the reasons given above with respect to claim 30.

New claim 42 is a method claim and recites the steps of performing those function which are carried out by means of system claim 31. The allowance of claim 42 is solicited for the reasons given above with respect to claim 31.

New claim 43 is a method claim and recites the steps of performing those function which are carried out by means of system claim 32. The allowance of claim 43 is solicited for the reasons given above with respect to claim 32.

New claim 44 is a method claim and recites the steps of performing those function which are carried out by means of system claim 33. The allowance of claim 44 is solicited for the reasons given above with respect to claim 33.

New claim 45 is a method claim and recites the steps of performing those function which are carried out by means of system claim 34. The allowance of claim 45 is solicited for the reasons given above with respect to claim 34.

NR-CORE001066

JA00123

New claim 46 is a method claim and recites the steps of performing those function which are carried out by means of system claim 35. The allowance of claim 46 is solicited for the reasons given above with respect to claim 35.

New claim 47 is a method claim and recites the steps of performing those function which are carried out by means of system claim 36. The allowance of claim 47 is solicited for the reasons given above with respect to claim 36.

New claim 48 depends from claim 37 and additionally includes the step of eavesdropping on operating system messages. Support for the recitations of claim 48 is set forth at page 2, lines 13-17 of the specification (or Coffey et al., column 1, lines 51-57)

Statements appearing above in respect to the disclosures in the cited references represent the present opinion of the applicants' undersigned attorney and, in the event that the Examiner disagrees with any such opinions, it is respectfully requested that the Examiner specifically indicate those portions of the reference providing the basis for a contrary view.

Applicants' representative agrees with the Examiner's implicit finding that the prior art made of record and not relied upon is not as relevant to the claimed invention as Hecht et al. and Shear.

NR-CORE001067

JA00124

JAN 14 2000 10:55 FR FULBRIGHT&JAWORSKI 24          TO 01933097020005170 P.20/22

On the basis of the above amendments and remarks, reconsideration and allowance of

claims 26-48 are respectfully requested.

Respectfully submitted,

**FULBRIGHT & JAWORSKI L.L.P.**
Attorneys for Applicants

By_____
     Peter F. Falfe
     Reg. No. 20,297

By_____
     C. Andrew Im
     Reg. No. 40,657

666 Fifth Avenue
New York, New York 10103
(212) 318-3000

625592.1                          -14-

NR-CORE001068

JA00125

# **TAB L**

#2

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

-------------------ooo:O:ooo-------------------

| | |
|---|---|
| Application of | : |
| Owen Davis et al. | : Group Art Unit: 2317 |
| Serial No.  08/821,534 | : |
| Filed: March 21, 1997 | : |
| For: METHOD AND APPARATUS | : |
|      FOR TRACKING CLIENT | : |
|      INTERACTION WITH A | : |
|      NETWORK RESOURCE AND | : |
|      CREATING CLIENT PROFILES | : |
|      AND RESOURCE DATABASE | : Docket No. D004-3169 |

-------------------ooo:O:ooo-------------------

COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C.  20231

### ATTORNEY'S STATEMENT IN SUPPORT OF
### PETITION TO MAKE SPECIAL UNDER 37 CFR §1.102(d)

S I R:

Pursuant to 37 CFR §1.102 and MPEP §708.02 II and VIII (c), (d) and (e), applicant's undersigned counsel hereby states that the present petition to make special is based upon the existence of actual infringing sales and that a pre-examination search was performed with respect to the subject matter of the captioned patent application and invention in the records of the U.S. Patent and Trademark Office.

NR-CORE001259

The field of the novelty search was conducted in U.S. Class 364, subclasses 222, 460, 464.28, 475.9, 481, 550, 569 and 570; Class 380, subclass 4; and Class 395, subclasses 200.54, 280, 381, 680 and 712. A search was also conducted on the LEXIS/NEXIS database to uncover all prior art patents in the field of computer software relating to the tracking or monitoring of the amount of time a resource is displayed or interacted with.

Submitted herewith are copies of the most pertinent references uncovered during the search together with a List of Prior Art Cited by Applicant (PTO 1449) listing each reference. A summary of the references is provided immediately hereinafter, followed by a discussion of the claimed invention at pages 9-13 and a description of the infringing sales at pages 13-15.

U.S. Patent No. 5,675,510 to Coffey et al. ("Coffey"), entitled "Computer Use Meter and Analyzer," discloses a system and method for measuring and reporting on the use of a personal computer by use of an executable tracking program resident on the personal computer which creates a log file. The log file includes entries corresponding to predetermined events, such as keyboard or mouse events. The executable program reports on the application software and hardware used and computer functions

-2-

NR-CORE001260

JA00127

engaged by the user by transmitting the log file to a remote processor via a telephone line. The log files from one or more computers may be assembled and analyzed to ascertain computer use habits for computer software, computer hardware and computer communications. The system may also be used to predict computer use trends and to represent computer use history of selected users. While Coffey discloses a tracking program for monitoring client interaction with various resources, it fails to disclose or suggest a method of monitoring client interaction with a resource downloaded from a server in which an executable tracking program is downloaded from a server to the client to monitor client interaction with the resource. In Coffey, the tracking program is permanently resident on personal computers belonging only to a selected panel of users representative of a population. Using the Coffee tracking program, computer use trends for the entire population are extrapolated based upon use habits of the members of the panel. Much like the well known Nielsen rating system used in television broadcasting, the Coffey system uses a program loaded only on selected computers and monitors and tracks usage of only those computers. Unlike the Coffee system, the claimed invention may be used without any similar limitations since it permits the address of an executable program to be embedded in a resource that may be downloaded to any personal computer.

-3-

NR-CORE001261

JA00128

U.S. Patent No. 5,682,525 to Bouve et al. ("Bouve"), entitled "System and Methods For Remotely Accessing a Selected Group of Items of Interest From a Database," discloses a method and apparatus which allows a user to access a common database from a remote communications port, at any qualified location, to generate a map or other positional information which locates selected items of interest. In a preferred embodiment, the database architecture includes separate phone and fax interfaces to interface with any of a plurality of remote ports. A database storage memory stores information which is accessible by the end user and which is responsive to user requests, including the storage of selected cities, locations of interest, maps of geographic vicinities, and advertising information. An additional information storage memory stores information which is accessible by the system data server and which stores information such as system usage and transaction logging. While Bouve discloses a method for monitoring the amount of time a user spends interacting with and displaying a file downloaded from a remote server, it requires continuity of direct connection between a user device and database server in order for the server to monitor the time a user interacts with the database. Bouve does not disclose or suggest a method of monitoring client interaction with a resource downloaded from a server in which an

-4-

NR-CORE001262

executable tracking program is downloaded from a server to the client to monitor client interaction with the resource.

U.S. Patent No. 4,977,594 to Shear ("Shear"), entitled "Database Usage Metering and Protection System and Method," discloses a system for metering and billing the usage of information distributed on a CD-ROM. The system requires the addition of an executable billing software module to a client computer system. The billing module may operate in a number of different ways. First, it may periodically communicate billing data to a central billing facility via a telephone line, whereupon the user may be billed. Second, billing may occur by disconnecting the billing module and sending it to a central billing facility where the data is read and a user bill generated. While Shear enables a server or software producer to monitor access and usage of a resource by a client, it does not disclose or suggest a method of monitoring client interaction with a resource downloaded from a server in which an executable tracking program is downloaded from a server to the client to monitor client interaction with the resource.

U.S. Patent No. 5,638,443 to Stefik et al. ("Stefik"), entitled "System for Controlling the Distribution and Use of Composite Digital Works," discloses a system for monitoring and controlling access to publications (digital

-5-

NR-CORE001263

JA00130

works) available on-line. Each digital work is comprised of a description part and a content part. The description part contains control information for the composite digital work. The content part stores the actual digital data comprising the composite digital work. The description part is logically organized in an acyclic structure (e.g. a tree structure). For a composite digital work, each node of the acyclic structure represents an individual digital work or some distribution interest in the overall composite work. Each node in the acyclic structure is comprised of an identifier of the corresponding individual work, usage rights for the individual digital work and a pointer to the digital work. The description part may be stored in a separate location from the content part. Composite digital works are stored in repositories comprising a storage means for storing a digital work and its attached usage rights, an external interface for receiving and transmitting data, a processor and a clock. Although Stefik discloses a system for monitoring access and usage of resources downloaded from a remote server, the reference fails to disclose or suggest a method of monitoring client interaction with a resource downloaded from a server in which an executable tracking program is downloaded from a server to the client to monitor client interaction with the resource.

-6-

NR-CORE001264

JA00131

In addition to the foregoing U.S. Patents, the following publications have been uncovered by the prior art search.

S. Gundavaram, <u>CGI Programming on the World Wide Web</u> (O'Reilley & Assoc., Inc.), pgs. 202-204, discloses the acquisition of client identifying indicia by the use of "persistent cookies." As disclosed by CGI Programming, one feature of the Netscape Navigator is the ability to store information on the client side. It does this by accepting a new Set-Cookie header from CGI programs, and passing that information back using a HTTP_COOKIE environment variable. The Set-Cookie header sets one cookie on the client side, where a key is equal to a value. When a certain document is accessed by the user, the browser will send the cookie information, provided that it is valid to do so, as the environment variable HTTP_COOKIE. Thus, the "cookie" of a client may be set by a server and later acquired by the server when the client passes a TCP/IP request to the server for a particular resource.

G. Cornell and S. Horstmann, <u>Core Java</u> (The Sunsoft Press), pgs. 562-579, discloses the generation of executable "order forms" on a client computer. In this application, the client machine loads a Web page from a server which has an embedded link to an executable program that downloads to and

-7-

NR-CORE001265

JA00132

executes on the client machine. Upon execution in the client machine, the program contacts the server and retrieves a list of goods and associated prices. The program allows the user to order various goods and requires the user to fill out a form for billing purposes. The user "clicks" on the submit button of the fill-in form to transmit the information to the server. This method of user-specific data acquisition requires the active participation of the user, and does not provide for the automatic determination of user preferences and interests.

In summary, while the prior art uncovered by the novelty search is pertinent in disclosing and teaching various elements of the present invention, such as the prior art existence of methods for monitoring client interaction with a resource downloaded from a server, the use of the Java programming language for downloading executable programs to client machines, and the acquisition of client identifying indicia, various claimed features of the present invention are patentably distinct from the prior art. For instance, none of the references uncovered by the novelty search disclose or suggest a method of monitoring client interaction with a resource downloaded from a server in which an executable tracking program is embedded in the resource and downloaded from a server to a client to monitor client interaction with

-8-

NR-CORE001266

JA00133

the resource, as required by claim 1 of the captioned patent application.

More specifically, claim 1 of the captioned patent application recites a method of monitoring the amount of time a user interacts with and displays a file downloaded from a server, comprising the steps of:

(1) using a client to specify an address of a resource located on a first server;

(2) downloading a file corresponding to the resource from the first server in response to specification of the address;

(3) using the client to specify an address of a first executable program located on a second server, the address of the first executable program being embedded in the file downloaded from the first server, the first executable program including a software timer for monitoring the amount of time the client spends interacting with and displaying the file downloaded from the first server;

(4) downloading the first executable program from the second server to run on the client so as to determine the amount of time the client interacts with the file downloaded from the first server;

(5) using a server to acquire client identifying indicia from the client; and

-9-

NR-CORE001267

JA00134

(6) uploading the amount of time determined by the first executable program to a third server.

Accordingly, the invention recited in claim 1 requires that the client specify an address of an executable program used for monitoring the amount of time a client spends interacting with and displaying a file downloaded from a server, wherein the address is embedded in the downloaded file.

None of the references uncovered by the novelty search discloses the combination of elements recited in claim 1 of the captioned application. Moreover, independent claims 35, 69 and 71 of the application have similar limitations, which are neither disclosed nor suggested by any of the foregoing references, either alone or in combination.

In one embodiment of the claimed invention, the URL (i.e., the address) of a tracking program is embedded in a resource, such as a Web page formatted in the Hypertext Markup Language ("HTML") which is sent from a server to a client based upon a TCP/IP request. The tracking program may originate on a different server than the resource, in which case it may be obtained by the client through a TCP/IP request to the other server. The tracking program executes on a client machine, and is stored in RAM. The tracking program may monitor various indicia, such as time, mouse events,

-10-

NR-CORE001268

JA00135

keyboard events, and the like, in order to track a user's interaction with the Web page. Thus, the tracking program may simply monitor the amount of time the user spends interacting (or viewing) the Web page, or may monitor details of choices (such as links) made by individual users within a particular Web page.

In general, a Web browser running on the client machine uses a TCP/IP connection to pass a request to a Web server running an HTTP service. The HTTP service then responds to the request, typically by sending a Web page to the browser. The browser displays the Web page. After any required initialization is performed, the tracking program is executed and may monitor the length of time the user remains in the Web page, or any one or more portions thereof, and may track some or all mouse and keyboard events to provide meaningful data to the Web server concerning the user's interaction with the Web page.

In its simplest form, the tracking program is a timer program linked to an HTML document and is downloaded and executed on a client when the HTML document is served to the client in response to a client TCP/IP request. During or after the client formats and displays the Web page specified by the HTML document, the tracking program begins a software timer to monitor the amount of time the Web page is displayed

-11-

NR-CORE001269

JA00136

on the client computer.  When the user leaves the Web page by exiting the Web page or "clicking" on a link to another resource, the tracking program sends the monitored time to another computer on the Internet for storage and analysis. Other available client information, such as the network ID and the client ID, or so-called "cookie" of the client, is also acquired and sent to the server for use by the administrator of the server or network to monitor how long clients are interacting with the server's resources.

In order to store client-identifying indicia, such as a user's network ID (IP) and client ID numbers (Cookies) and associated tracking information, a database is set up on a server.  In the case of the tracking program described above, the information stored in the server database may include the network ID, client ID, the associated link (the URL of the Web page), the amount of time the user spent interacting with the Web page, and any selections or choices made by the user while interacting with the Web page.

In the embodiment illustrated in Figure 5 of the application drawings, a software timer is initiated or stopped when the user causes a predetermined keyboard or mouse event to occur by clicking on a specified area of a part of a Web page (such as an advertising banner).  Rather than monitoring the amount of time the user spends viewing the entire Web

-12-

NR-CORE001270

JA00137

page, the tracking program monitors the amount of time a user spends interacting with or viewing a portion of the Web page, such as a particular advertising banner. For example, if the Web page is provided with an advertising banner that includes a link to the advertiser's Web site, the tracking program can be adapted to monitor the amount of time the user views a Web page of that site. Alternatively, if the advertising banner is provided with an interactive resource such as a game or information resource activated by clicking on a particular button, the tracking program may determine how long a user has interacted with that resource.

Attached as Exhibits A through C are Web site advertisements published by three of applicants' competitors. Each of these competitors is presently offering for sale Internet advertising services and/or products that directly and literally infringe numerous claims of the present patent application. Exhibits A and B each show an offer for sale of an advertising service which provides Internet advertisers with detailed information concerning client interaction with ad banners, including the amount of time users interact with and display such banners. In the context of an ad banner, this is accomplished by downloading an ad banner in the form of an HTML formatted document which includes a link (URL) to an executable program (JAVA applet) that is also downloaded to

-13-

NR-CORE001271

JA00138

the client computer and which executes in the client computer to track client interaction with the ad banner, including the amount of time the client spends interacting with the ad banner, and to acquire client identifying indicia. The executable program then transmits the tracked information and client identifying indicia to a server, where it can be maintained and analyzed. Such a process directly and literally infringes numerous claims of the captioned patent application, including independent claims 1, 35, 69 and 71.

Exhibit C shows a software package being offered for sale to Internet advertising services that uses JAVA programs to carry out the claimed method. As disclosed by Exhibit C, a JAVA applet, named "client", is downloaded to a client computer for monitoring client interaction with resources, such as advertisements, downloaded from the Internet.

Petitioners' undersigned counsel hereby states that a rigid comparison of the infringing methods shown in Exhibits A and B and the product shown in Exhibit C with the claims of the application has been made and that in his opinion, at least some of the claims are unquestionably infringed. As noted above, the undersigned counsel has also caused a careful and thorough search of the prior art to be made to uncover references disclosing the use of tracking programs used to monitor client interaction with network resources, including

-14-

NR-CORE001272

JA00139

access time.  No such reference discloses or suggests the novel aspects of the invention recited in independent claims 1, 35, 69 and 71.

Respectfully submitted,

ADAMS & WILKS
Attorneys for Applicants

By: Bruce L. Adams
Reg. No. 25,386

50 Broadway
31st Floor
New York, NY  10004
(212) 809-3700

-15-

NR-CORE001273

JA00140

# TAB M



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

8-1

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/707,279 | 09/03/98 | BLUMENAU | T | |

LMC1/0303

| | EXAMINER |
|---|---|
| | NGUYEN, E |

DAVID R GRAHAM
1337 CHEWPON AVENUE
MILPITAS CA 95035

| ART UNIT | PAPER NUMBER |
|---|---|
| | 8 |

DATE MAILED:   03/03/99

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)

1- File Copy

NR-CORE000613

| *Office Action Summary* | Application No. 08/707,279 | Applicant(s) BLUMENAU |
|---|---|---|
| | Examiner 1. Cuong H. Nguyen | Group Art Unit 2764 |

☒ Responsive to communication(s) filed on *5/14/98 (the IDS)*.

☐ This action is FINAL.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ____3____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

Disposition of Claims

☒ Claim(s) *1-66* _____ is/are pending in the application.

   Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) *1-66* _____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

Application Papers

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☒ The drawing(s) filed on ___*Sep 3, 1996*___ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☒ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

Priority under 35 U.S.C. § 119

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

   ☐ All ☐ Some* ☐ None   of the CERTIFIED copies of the priority documents have been

      ☐ received.

      ☐ received in Application No. (Series Code/Serial Number) _____.

      ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   *Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

Attachment(s)

☒ Notice of References Cited, PTO-892

☒ Information Disclosure Statement(s), PTO-1449, Paper No(s). _2, 5_

☐ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

— SEE OFFICE ACTION ON THE FOLLOWING PAGES —

NR-CORE000614

JA00142

Serial Number: 08/707,279
Art Unit: 2764

### DETAILED ACTION

1.    This Office Action is the answer to the communication received on 10/19/98.

2.    Claims **1-66** are pending in this application.

#### Drawing Objections

3.    The drawings submitted with this application were declared informal by the applicants, the drawings are acceptable for examination purposes only.  Accordingly, they have not been reviewed by a draftsperson at this time.  When formal drawings are submitted, the draftsperson will perform a review.

The examiner submits that "a system for monitoring displays by a computer system and its associated network" should be included in drawings.

Direct any inquiries concerning drawing review to the Drawing Review Branch (703) 305-8404.

#### Specification Objection

4.    The disclosure is objected to because of the following informality:

The title of the invention is not descriptive.  A new title is required that is clearly indicative of the invention to which the claims are directed.

The following title is suggested: "Content display monitoring by a computer system".

Serial Number: 08/707,279
Art Unit: 2764

Appropriate correction is required.

The following rejections are based on the examiner's best interpretation of the claims.

### Claim Objection

5.    Claims 8 is objected as being incomplete for omitting essential element, such omission amounting to a gap between the elements. The omitted element is: a typo error (missing word) on line 4 of claim 8.

### Claim Rejections - 35 USC § 112

6.    The following is a quotation of the second paragraph of 35 U.S.C. 112:

*The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.*

Claim 12 is rejected under 35 U.S.C. 112, second paragraph, as being incomplete for indefiniteness "...means for monitoring the change in time of a characteristic of the content display...". This characteristic should be defined (e.g. position, or shape, or color ...).

Appropriate corrections are required.

### Claim Rejections - 35 USC § 101

7.    Claim 66 discloses a non-statutory subject matter under 35 U.S.C. 101 because "a method for monitoring the display of content ..." is a computer-related method for performing

NR-CORE000616

JA00144

Serial Number: 08/707,279
Art Unit: 2764

a process.  This method does not perform <u>independent physical acts</u> (it must rely on a execution/control of a computer system/network) or manipulate data (<u>which are not disclosed</u>) representing physical objects to achieve a practical application; in contrast, it merely manipulates abstract ideas without any limitation to a specific practical application.

### Claim Rejections - 35 USC § 102

The following is a quotation of the appropriate paragraphs of 35 U.S.C. § 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless --

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371(c) of this title before the invention thereof by the applicant for patent.

8.  Claims 1-2, 11-12, 15, 48-49, 57-58, 64, and 66 are rejected under 35 U.S.C. § 102(b) as being anticipate by Curran et al. (GB 2250112 - 5/27/92).

NR-CORE000617

JA00145

Serial Number: 08/707,279
Art Unit: 2764

Curran et al. disclose a system/method/computer-readable medium for monitoring displays by a computer system, comprising:

- instructions for causing the content to be displayed by a computer system (inherently in Curran et al.'s patent);

- means/step/instructions for monitoring a position/a change in time of an image on a display screen of a computer system (see Curran et al., pp. 4:9-12, 5:3-8, 17-23); and

- means/step/instructions for evaluating/comparing/judging a position/a change in time of an image on a display screen (see Curran et al., pp. 5:6-7 and 5:13-16).

Therefore, all of the limitations of those claims are met by Curran et al.

### Claim Rejections - 35 USC § 103

9.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office Action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patent ability shall not be negatived by the manner in which the invention was made.

A.    Claims **3, 9-10, 12, 31, 50, 56** are rejected under 35 U.S.C. §103(a) as being unpatentable over Curran et al. (GB

NR-CORE000618

JA00146

Serial Number: 08/707,279
Art Unit: 2764

2250112 - 5/27/92), in view of Brown (Using Netscape 2 - Special Edition).

A1. <u>As per claims 3/50, 9/56, 10/31:</u>   The rationales for rejection of claims 2/49 are incorporated herein.

Curran et al. don't discuss a means for determining if a display is hidden by other images.

However, Brown suggests that a means/instruction(s) for comparing/ evaluating/determining if a display is hidden by other images (see Brown, pp. 616-617, 639, 834-835, and 950-951).

- an image can be a pointer, & means for determine times a pointer enter an area (claims 9/56 are obvious with Brown's);

- a content being monitored can be a graphical display (claim 10/31 is obvious with Brown's);

Therefore, it would have been obvious to one of ordinary skill in the art at the time of invention to implement Curran et al. 's system with Brown's suggestion because it increases a completeness in monitoring a display of content by a computer system.

B.   Claims 4-6, 17, 50-55, 63 are rejected under 35 U.S.C. §103(a) as being unpatentable over Curran et al. (GB 2250112

NR-CORE000619

JA00147

Serial Number: 08/707,279
Art Unit: 2764

- 5/27/92), in view of Brown (Using Netscape 2 - Special
Edition),and further in view of Capps (US Pat. 5,634,100).

The rationales for rejection of claim 3 are
incorporated herein.

B1.  Ref. To claims 4-6, 17, 51-53, 63: Curran et al. don't
discuss a means for determining a duration of each time if a
display is hidden by other images.

However, Brown obviously suggests there is a
means/instructions for determining a duration of each time
if a display is hidden by other images (see Brown, pp. 270,
805, 720-721).  Furthermore, Capps clearly discloses that
fact with Figs. 7 & 10, 12:64-67.  The limitation of
"...means for determining ...is not hidden .." is easily
figure out after solving the first limitation.

B2.  Ref. To claims 7/54, 8/55:    The examiner submits that
claim 7/54 is a combination of claims 4-6.  And claim 8/55
is a combination of claims 4-7; hence they are rejected with
similar rationales.

Therefore, it would have been obvious to one of
ordinary skill in the art at the time of invention to
implement Curran et al.'s system with Brown & Capps's
suggestions because it increases a completeness in
monitoring a display of content by a computer system.

NR-CORE000620

JA00148

Serial Number: 08/707,279
Art Unit: 2764

C.   Claims 13/29/34/59/65, 61-62 are rejected under 35
U.S.C. §103(a) as being unpatentable over Curran et al. (GB
2250112 - 5/27/92), in view of Brown (Using Netscape 2 -
Special Edition),and further in view of Capps (US Pat.
5,634,100) & Lucero et al. (US Pat. 4,283,709).

Curran et al. discuss about monitoring displays on
computer system (using instructions for monitoring and
evaluating displays), wherein contents are inherently
displayed in response to instructions that is provided from
external sources.  They failed to teach means for
ascertaining a beginning/an end of a display and a
relationship between them.

However, Lucero et al. ('709) obviously suggests these
missing features (see Lucero et al. 10:38-45, and 14:23-37).
Furthermore, Capps ('100)(suggests that fact with Figs. 8,
10, 18, and 12:64-67, 13:49-57, 16:56-64).

Ref. To claims 14/60:   The examiner submits that an
instruction is provided by a user of the system is obvious
in Curran et al. invention.

Ref. To claims 15-16, 32, 62, 64-65:   The examiner submits
that these claims are a combination of rejected claims 1 &
2; hence similar rationales are applied.

NR-CORE000621

JA00149

Serial Number: 08/707,279
Art Unit: 2764

Therefore, it would have been obvious to one of ordinary skill in the art at the time of invention to implement Curran et al. 's system with Brown, Lucero et al. & Capps 's suggestions because it increases a completeness in monitoring a display of content by a computer system.

10.  Claims 18-30, 32, 33, 35-41 are rejected under 35 U.S.C. §103(a) as being unpatentable over Curran et al. (GB 2250112 - 5/27/92), in view of Brown (Using Netscape 2 - Special Edition).

The rationales for rejection of claim 1 are incorporated herein.

Curran et al. do not clearly teach that "means for transferring data (means for monitoring) between sites in response to a signal (a transfer of data) from a provider site".

However, Brown (Using Netscape 2 - Special Edition) obviously suggests that feature, and features in claims 38-41.

Furthermore, the examiner submits that claim 23 is obvious in LAN/WAN for relaying messages; and it is inherent in Netscape to predict displays of many icons/fonts/shape (conclusions may be deduced regarding the observation of the content - claim 26);

NR-CORE000622

Serial Number: 08/707,279
Art Unit: 2764

Claim 27/32 is a combination of claim 1 and 21; hence rationales for rejection is applied similarly;

Claim 28/33 is similar to claim 11; hence rationales for rejection is applied similarly;

It would have been obvious to one of ordinary skill in the art at the time of invention to implement Brown's suggestion in Curran et al. invention, because this is a well-known feature in data transfer area.

11. Claims 42-47 are rejected under 35 U.S.C. §103(a) as being unpatentable over Curran et al. (GB 2250112 - 5/27/92), in view of Brown (Using Netscape 2 - Special Edition), and further in view of Cannon et al. (US Pat. 5,673,382).

The rationales for rejection of claims 1, 18, 21, and 25 are incorporated herein.

Claim 42 is a combination of claim 1, 18, 21, and 25; hence rationales for rejection is applied similarly;

Claim 43 further having limitations which can be rejected based on Cannon et al. 's disclosure ('382 5:23-60);

It would have been obvious to one of ordinary skill in the art at the time of invention to implement Brown's suggestion, and Cannon et al. disclosure in Curran et al.

NR-CORE000623

Serial Number: 08/707,279
Art Unit: 2764

invention, because these are well-known limitations in data transfer area.

### Conclusion

12.  Claims 1-66 are rejected.

13.  The related references (including the prior arts made of record but not relied upon by the examiner) are considered pertinent to applicant's disclosure.

14.  Any inquiry concerning this communication or earlier communications from the examiner should be directed to examiner Cuong H. Nguyen, whose telephone number is (703)305-4553.  The examiner can normally be reached on Monday-Friday from 7:00 AM-4:30 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, James P. Trammell, can be reached on (703)305-9768.

Any response to this action should be mailed to:

Box Issue Fee                           Amendments

Commissioner of Patents and Trademarks

c/o Technology Center 2700

Washington, D.C. 20231

or faxed to:           (703) 308-9051, (for formal

communications intended for entry)

11

NR-CORE000624

JA00152

Serial Number: 08/707,279
Art Unit: 2764

Or:        (703) 308-5397  (for informal or draft

           communications, please label "PROPOSED" or

           "DRAFT")

Hand-delivered responses should be brought to Crystal Park II,  2121
Crystal Drive, Arlington. VA., Sixth Floor  (Receptionist).

    Any inquiry of a general nature or relating to the

status of this application should be directed to the Group

receptionist whose telephone number is (703)305-3900.

Cuong H. Nguyen
February 26, 1999

James P. Trammell
Supervisory Patent Examiner
Technology Center 2700

12

NR-CORE000625

**Notice of References Cited**

| | Application No. 08/707,279 | | Applicant(s) BLUMENAU | | |
|---|---|---|---|---|---|
| | Examiner Cuong H. Nguyen | | Group Art Unit 2764 | | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| ✳ | A | 5,799,292 | 8/25/98 | Hekmatpour | 707 | 513 |
| | B | 5,673,382 | 9/30/97 | Cannon et al. | 395 | 182.04 |
| | C | 5,634,100 | 5/27/97 | Capps | ---- | ---- |
| ✳ | D | 5,623,652 | 4/22/97 | Vora et al. | 707 | 10 |
| ✳ | E | 5,414,809 | 5/09/95 | Hogan et al. | 346 | 349 |
| | F | 4,283,709 | 8/11/81 | Lucero et al. | --- | ---- |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|---|
| | N | | | | | | |
| | O | | | | | | |
| | P | | | | | | |
| | Q | | | | | | |
| | R | | | | | | |
| | S | | | | | | |
| | T | | | | | | |

**NON-PATENT DOCUMENTS**

| | DOCUMENT (including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|
| U | Brown, "Using Netscape 2- Special Edition", QUE, 2nd edition (attached pages). | 1995 |
| V | | |
| W | | |
| X | | |

U.S. Patent and Trademark Office
PTO-892 (Rev. 9-95)

Notice of References Cited

Part of Paper No. 8

NR-CORE000626

JA00154