# TAB N

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:      Trevor Blumenau

Assignee:       Nielsen Media Research, Inc. and Internet Profiles
                Corporation

Title:          Content Display Monitor

Serial No.:     08/707,279    Filed:  September 3, 1996

Examiner:       C. Nguyen     Group Art Unit:  2764

Attorney Docket No.:  BLU-001 (formerly 102506-1100US)

---------------------------------------------------------------

                                    Milpitas, California
                                    June 3, 1999

Box Non-Fee Amendment                   **RECEIVED**
Assistant Commissioner for Patents
Washington, D.C. 20231                  JUN 1 1 1999

                RESPONSE TO OFFICE ACTION      Group 2700

Sir:

     Please enter the following response to the Office Action

dated March 3, 1999, in the above-identified application.


                    IN THE SPECIFICATION

     At page 1, line 5, delete "and";

                line 6, delete "observation";

                     after "system", insert --and observation

                     of that content--.

     At page 17, line 27, after "met", insert --.--.

     At page 19, line 2, delete "user's" and substitute

                     --observer's--.

     At page 21, line 6, delete "user's" and substitute

                     --observer's--.


                        - 1 -

NR-CORE000638

JA00155

At page 38, line 22, after "required" (first occurrence),
insert --content--.

## IN THE CLAIMS

Please amend the claims as follows:

8.    (Amended) A system as in Claim 6, wherein the means for
comparing further comprises:

means for determining the total duration of time that
the content display is fully hidden by the one or more
images;

means for determining the total duration of time that
the content display is partially hidden by the one or more
images; and

means for determining the total duration of time that
the content display is not hidden by the one or more images.

30.    (Amended) A system for monitoring the display at a
content display site of content that is provided by a content
provider site over a network to the content display site, wherein
the network operates according to a protocol that enables new
content to be transferred to a content display site in response
to selection of a portion of the content currently being
displayed at the content display site, the system comprising:

means for monitoring the display of the content to
produce monitoring information regarding display of the
content; and

means for transferring the means for monitoring from

- 2 -

NR-CORE000639

JA00156

the content provider site to the content display site so
that the means for monitoring operates at the content
[provider] display site.

59.    (Amended) A computer readable medium encoded with one
or more computer programs for enabling the monitoring of the
display of content by a computer system, for use with a computer
system in which the content is displayed in response to a content
display instruction that is provided from a source external to
the computer system and not part of the monitoring computer
program or programs, comprising:

   instructions for ascertaining the beginning of a
display of the content;
   instructions for ascertaining the end of a display of
the content; and
   instructions for monitoring the display of the content,
wherein:
      the instructions for monitoring begin executing
when the beginning of a display of the content is
ascertained; and
      the instructions for monitoring stop executing
when the end of a display of the content is
ascertained.

64.    (Amended) A computer readable medium encoded with one
or more computer programs for enabling the monitoring of the
display of content by a computer system, comprising:

- 3 -

instructions for causing the content to be displayed by the computer system; and

instructions for monitoring the display of content by the computer system to produce monitoring information regarding the display of the content, wherein the monitoring instructions are integrated with the display instructions such that execution of the display instructions causes execution of the monitoring instructions.

## REMARKS

### Objection to the Drawings

The Examiner objected to the drawings, stating that "'a system for monitoring displays by a computer system and its associated network' should be included in the drawings."

FIGS. 3A-3C of the drawings of the instant application are simplified diagrams of a network illustrating operation of one embodiment of the invention. FIGS. 3A-3C show a network communication line or lines 303 between a content provider site 301 and a content display site 302. As stated in Applicant's specification at page 20, lines 23-32:

> [I]n response to [a] request for content from the content provider site 301, a set of monitoring instructions ... are ... transferred to the content display site 302. ... [T]he monitoring instructions cause [a] client computer at the content display site 302 to monitor the display of the content to produce monitoring information regarding the manner in which the content is displayed.

The provision of such monitoring instructions to the content display site 302 is also illustrated in FIGS. 3A-3C. In view of

- 4 -

NR-CORE000641

JA00158

the foregoing, Applicant contends that the drawings already
illustrate what the Examiner has requested be added to the
drawings (though the apparatus at the content display site 301
need not necessarily be embodied by a computer system).

## Objection to the Specification

The Examiner objected to the specification.  The Examiner
stated:

> The title of the invention is not descriptive.  A new
> title is required that is clearly indicative of the
> invention to which the claims are directed.
>
> The following title is suggested:  "Content display
> monitoring by a computer system".

Applicant contends that the present title of the application
is clearly indicative of Applicant's invention.  Further,
Applicant submits that the title suggested by the Examiner may
indicate that the invention is limited in a way in which it need
not necessarily be, i.e., to use with a computer system (see,
e.g., Claims 18-47 and 65).  Therefore, Applicant has not amended
the title.

## Objection to the Claims

The Examiner objected to Claim 8.  The Examiner stated:

> Claims 8 is objected as being incomplete for omitting
> essential element, such omission amounting to a gap
> between the elements.  The omitted element is:  a typo
> error (missing word) on line 4 of claim 8.

Applicant has amended Claim 8 to add the word omitted in
line 4.  Withdrawal of the objection to Claim 8 is requested.

NR-CORE000642

JA00159

Rejection of Claims and Summary of Response

Claims 1-66 were filed and are pending. Claim 12 was rejected under 35 U.S.C. § 112. Claim 66 was rejected under 35 U.S.C. § 101. As best Applicant can determine, Claims 1, 2, 11, 12, 15, 48, 49, 57, 58, 64 and 66 were rejected under 35 U.S.C. § 102, and Claims 3-10, 13, 14, 16-47, 50-56, 59-63 and 65 were rejected under 35 U.S.C. § 103. Claims 8, 30, 59 and 64 have been amended. Reconsideration and allowance of Claims 1-66 is requested.


Rejection of Claims under 35 U.S.C. § 112

The Examiner rejected Claim 12 under 35 U.S.C. § 112, second paragraph. The Examiner stated:

> Claim 12 is rejected ... as being incomplete for indefiniteness "...means for monitoring the change in time of a characteristic of the content display...". This characteristic should be defined (e.g. position, or shape, or color ...).

Applicant assumes that the Examiner meant to reject Claim 11, not Claim 12, since the former claim, not the latter, includes the language quoted by the Examiner. This language is not indefinite, as the Examiner is apparently contending, simply because Applicant has not recited in Claim 11 a list of characteristics that can be monitored (which list may unduly limit the scope of claim). In view of the foregoing, it is requested that the rejection of Claim 11 under 35 U.S.C. § 112 be withdrawn.

- 6 -

NR-CORE000643

JA00160

Rejection of Claims under 35 U.S.C. § 101

The Examiner rejected Claim 66 under 35 U.S.C. § 101. The Examiner stated:

> Claim 66 discloses a non-statutory subject matter ... because "a method for monitoring the display of content ..." is a computer-related method for performing a process. This method does not perform independent physical acts (it must rely on a execution/control of a computer system/network) or manipulate data (which are not disclosed) representing physical objects to achieve a practical application; in contrast, it merely manipulates abstract ideas without any limitation to a specific practical application.

The Examiner's contention that Claim 66 recites non-statutory subject matter rests on several incorrect premises. For example, the Examiner states that Claim 66 recites non-statutory subject matter because it recites a computer-related method for performing a process. However, a computer-related method for performing a process is not per se unpatentable. Further, it is incorrect that the method of Claim 66 "does not ... manipulate data ... representing physical objects to achieve a practical application." For example, Claim 66 recites "evaluating the position of [a] content display on [a] display screen to produce monitoring information regarding display of the content." The position of a content display on a display screen is clearly a "physical object" and the production of monitoring information regarding display of the content is clearly a "practical application." In view of the foregoing, it is requested that the rejection of Claim 66 under 35 U.S.C. § 101 be withdrawn.

- 7 -

NR-CORE000644

JA00161

Rejection of Claims under 35 U.S.C. § 102 and § 103

Pending claims 1-66 have been rejected by the Examiner under 35 U.S.C. § 102 or § 103. Each of the rejections is predicated either solely or primarily upon the teaching of UK Patent Application No. 2250112 by Curran et al. Thus, Applicant believes it beneficial to begin by providing a summary of the teaching of Curran et al. and a comparison of that teaching to the invention of the instant application.

Curran et al. teach (Abstract):

A capture device for use in testing a target computer 7 ...[. The capture device includes] a screen capture circuit 2 including a decode circuit 18 which reads pixel control signals transmitted to a target screen 17 .... This allows monitoring of what is actually displayed on a target screen 17 rather than what is transmitted to [a] target screen memory 15.

Curran et al. indicate that their screen capture circuit is an improvement over previous screen capture circuits "which are constructed to read data transmitted to a screen memory of a target computer" (page 1, lines 5-6), so that, therefore, "it [cannot be] known what is actually displayed on the target screen" (page 1, lines 15-17). Curran et al. teach (page 4, lines 7-14):

The screen capture circuit 2 comprises a decode circuit 18 which is connected to the output of [a] graphics display circuit 16. The decode circuit 18 is constructed to monitor the position and clock signals of pixel control signals and to generate hexadecimal bytes representing displayed pixels. The position and clock signals are used to generate these bytes and to generate control signals for [a] memory pointer circuit 20.

- 8 -

NR-CORE000645

JA00162

Curran et al. further teach (page 4, line 26 to page 5, line 23):

> The decode circuit 18 generates hexadecimal memory
> bytes from the pixel control signals, which memory
> bytes are transmitted to [a] capture memory 19 for
> storage. Monitored position signals within the pixel
> control signals are used to address these bytes and to
> generate control signals for the memory pointer
> circuit 20 to allow [a] host computer to read the
> capture memory 19 in an intelligent manner .... The
> position signals within the pixel control signals which
> are used for generation of the control signals for the
> memory pointer circuit 20 are horizontal and vertical
> synchronous signals and clock signals.
>
> ...
>
> It will thus be appreciated 'that the screen capture
> circuit allows a user to examine the actual signals
> controlling the target screen ...., The user is thus
> given a picture of what exactly is displayed rather
> than a representation of what should be displayed on
> the target screen. (Emphasis added.)

In short, Curran et al. teach monitoring the generation of a
display by a display device in a particular manner that provides
an accurate representation of what is actually displayed by the
display device.

In contrast, the present invention "can enable monitoring of
the display of content by a computer system" (Applicant's
specification at page 12, lines 8-9). In particular, "the
invention can enable monitoring of [a] content display to produce
monitoring information from which conclusions may be deduced
regarding the observation of the content display by an observer"
(Applicant's specification at page 12, lines 9-12). The
invention enables the display of content to be monitored in a
variety of ways. For example, "the display of content by a
computer system can be monitored by monitoring the position of
the content display on a display screen of the computer system

- 9 -

NR-CORE000646

JA00163

and evaluating the position of the content display on the display
screen to produce monitoring information regarding display of the
content" (Applicant's specification at page 13, lines 3-8), e.g.,
a determination can be made as to whether (and for how long and
to what extent) the content display is hidden by another image
(see, e.g., Applicant's specification at page 13, lines 13-22)
and/or a determination can be made of the number of times that an
on-screen pointer entered an area defined by the content display
(see, e.g., Applicant's specification at page 13, lines 23-29).
Or, for example, "the display of content by a computer system can
be monitored by monitoring the change in time of a characteristic
of the content display and evaluating the change in time of the
characteristic of the content display to produce monitoring
information regarding display of the content" (Applicant's
specification at page 13, line 30 to page 14, line 2), e.g.,
determinations can be made regarding whether the content display
is hidden or regarding the presence of an on-screen pointer
within the content display (see, e.g., Applicant's specification
at page 14, lines 8-13). Further, "monitoring of the display of
content by the computer system can begin at the beginning of the
content display and end at the end of the content display"
(Applicant's specification at page 14, lines 20-22), thus
enabling, for example, the duration of a content display to be
readily determined (see, e.g., Applicant's specification at
page 14, lines 24-25).

   Curran et al. do not teach or suggest the monitoring of
content (which exists apart from representation on a display

- 10 -

NR-CORE000647

JA00164

device and, in particular, from the pixel control signals used to generate a display of the content on a display device), as in the present invention. Unlike the present invention, the capture device taught by Curran et al. is not concerned with how content is displayed or, more particularly, with whether - and, if so, how - displayed content is observed by an observer. Conversely, unlike the capture device taught by Curran et al., the present invention is not concerned with the fidelity of a content display.

The present invention "can also enable monitoring of the display at a content display site of content that is provided by a content provider site over a network to the content display site" (Applicant's specification at page 12, lines 12-15). This can be accomplished, for example, by causing "a mechanism for monitoring the display of the content [to] be transferred from the content provider site to the content display site in response to (e.g., together with) the transfer of content from the content provider site" (Applicant's specification at page 15, lines 1-5)." This can enable, for example, monitoring of content provided via the World Wide Web (or other, similar network) once the content has been transferred from a content provider site to a content display site (see, e.g., Applicant's specification at page 15, lines 25-28). The monitoring information can be transferred to a remote site of the network, which can be different from the content provider site (see, e.g., Applicant's specification at page 16, line 17 to page 17, line 8). As is clear from the above description of the teaching of Curran et

- 11 -

NR-CORE000648

JA00165

al., Curran et al. do not in any way teach or suggest the
monitoring of the display of content provided over a network, as
enabled by the present invention.

Finally, the present invention "can enable the expeditious
provision of updated and/or tailored content over a network from
a content provider site to a content display site so that the
content provider's current and appropriately tailored content is
always displayed at the content display site" (Applicant's
specification at page 12, lines 16-20). The content, which can
include both primary content provided by the content provider
site and secondary content provided by one or more third parties
(see, e.g., Applicant's specification at page 17, lines 11-13),
can be provided in a manner that "relieves the primary content
provider of the need to manage the storage of content, while
reserving control over the provision of that content to the
primary content provider, thereby enabling the content provider
to ensure that the bandwidth requirements of the content provided
from the content provider site are met" (Applicant's
specification at page 17, lines 22-27). As is clear from the
above description of the teaching of Curran et al., Curran et al.
do not in any way teach or suggest provision of updated and/or
tailored content over a network from a content provider site to a
content display site, as enabled by the present invention.

- 12 -

JA00166

1.    Rejection of claims under 35 U.S.C. § 102

The Examiner rejected Claims 1, 2, 11, 12, 15, 48, 49, 57, 58, 64 and 66 under 35 U.S.C. § 102(b) as being anticipated by Curran et al. (GB 2250112 - 5/27/92). The Examiner stated:

> Curran et al. disclose a system/method/computer-readable medium for monitoring displays by a computer system, comprising:
> - instructions for causing the content to be displayed by a computer system (inherently in Curran et al.'s patent);
> - means/step/instructions for monitoring a position/a change in time of an image on a display screen of a computer system (see Curran et al., pp. 4:9-12, 5:3-8, 17-23); and
> - means/step/instructions for evaluating/comparing/judging a position/a change in time of an image on a display screen (see Curran et al., pp. 5:6-7 and 5:13-16).

> Therefore, all of the limitations of those claims are met by Curran et al.

Claims 1, 15, 48 and 66 each recite means for, instructions for, or a step of "monitoring the position of [a] content display on a display screen of [a] computer system." The Examiner contends that Curran et al. teach "means/step/instructions for monitoring a position ... of an image on a display screen of a computer system ...." However, this is not so. Rather, as indicated by the above-quoted sections of the Curran et al. patent application (and, in particular, the emphasized part of those above-quoted sections), Curran et al. teach that the decode circuit of a screen capture circuit monitors the <u>position signal</u> (i.e., horizontal and vertical synchronous signals) of pixel control signals to enable generation of control signals for a memory pointer circuit to allow a host computer to read a capture

- 13 -

NR-CORE000650

memory in an intelligent manner. Monitoring the position signal of pixel control signals does not constitute monitoring of the position of an image, but, rather, enables addressing of pixels of an image display. Such addressing is necessary in order for Curran et al. to accomplish their desired goal of providing an accurate representation of what is actually displayed by a display device.

Further, Claims 1, 15, 48 and 66 each also recite means for, instructions for, or steps of "evaluating the position of the content display on the display screen to produce monitoring information regarding display of the content." The Examiner contends that Curran et al. teach "means/step/instructions for evaluating/comparing/judging a position ... of an image on a display screen." However, again, this is not so. As made clear by the discussion above, Curran et al. do not evaluate the position of an image at all, but, instead, provide a representation of the content of a displayed image. That Curran et al. do not teach or suggest "evaluating the position of [a] content display," as recited in Claims 1, 15, 48 and 66, is made even clearer by considering the particular ways of accomplishing such evaluating recited in Claims 2-9 and 50-56, none of which are taught or remotely suggested by Curran et al. That Curran et al. also do not teach or suggest "produc[ing] monitoring information regarding display of the content," as recited in Claims 1, 15, 48 and 66, is made even clearer by consideration of examples of such monitoring information given in Applicant's specification (see, e.g., page 25, lines 26-27; page 26, lines

- 14 -

NR-CORE000651

JA00168

12-13; page 26, line 29 to page 27, line 14; page 31, lines 5-8; page 31, lines 19-22; and page 31, line 33 to page 34, line 15).

Claims 2 and 49 depend upon Claims 1 and 48, respectively, and so are allowable as dependent on an allowable claim.

Claims 11 and 57 each recite means or instructions for "monitoring the change in time of a characteristic of the content display." The Examiner contends that Curran et al. teach "means/step/instructions for monitoring ... a change in time of an image on a display screen of a computer system ...." However, this is not so. Rather, as indicated by the above-quoted sections of the Curran et al. patent application, Curran et al. teach that the decode circuit of a screen capture circuit monitors the clock signal of pixel control signals to enable generation of control signals for a memory pointer circuit to allow a host computer to read a capture memory in an intelligent manner. Monitoring the clock signal of pixel control signals does not constitute monitoring of changes in an image over time, but, rather, like monitoring of the position signal of pixel control signals described above, enables addressing of pixels of an image display. As indicated above, such addressing is necessary in order for Curran et al. to accomplish their desired goal of providing an accurate representation of what is actually displayed by a display device.

Further, Claims 11 and 57 each also recite means or instructions for "evaluating the change in time of the characteristic of the content display to produce monitoring information regarding display of the content." The Examiner

- 15 -

NR-CORE000652

JA00169

contends that Curran et al. teach "means/step/instructions for
evaluating/comparing/judging ... a change in time of an image on
a display screen ...." However, again, this is not so. As made
clear by the discussion above, Curran et al. do not evaluate
changes in an image over time, but, instead, provide a
representation of the content of a displayed image at one instant
in time. That Curran et al. do not teach or suggest "evaluating
the change in time of [a] characteristic of [a] content display
to produce monitoring information regarding display of the
content," as recited in Claims 11 and 57, is made even clearer by
consideration of examples of such evaluation and monitoring
information given in Applicant's specification (see, e.g.,
page 32, lines 24-33).

Claims 12 and 58 depend upon Claims 11 and 57, respectively,
and so are allowable as dependent on an allowable claim.

As amended, Claim 64 recites "a computer readable medium
encoded with one or more computer programs ..., comprising:
instructions for causing [c]ontent to be displayed by [a]
computer system; and instructions for monitoring the display of
content by the computer system to produce monitoring information
regarding the display of the content, wherein the monitoring
instructions are integrated with the display instructions such
that execution of the display instructions causes execution of
the monitoring instructions." A computer program as recited in
Claim 64 is described in Applicant's specification at, for
example, page 22, line 23 to page 24, line 2. As described in
Applicant's specification, such a computer program enables

- 16 -

NR-CORE000653

JA00170

monitoring capability not previously available: in particular, monitoring capability not previously available for monitoring content provided over a network from a content provider site to a content display site (see, e.g., Applicant's specification at page 24, lines 3-17). The Examiner has not identified where the limitations recited in Claim 64, before amendment, are taught by Curran et al. Further, the limitations recited in Claim 64 after amendment are also not taught by Curran et al.

In view of the foregoing, it is requested that the rejection of Claims 1, 2, 11, 12, 15, 48, 49, 57, 58, 64 and 66 under 35 U.S.C. § 102 be withdrawn.

2.    Rejection of claims under 35 U.S.C. § 103

The Examiner rejected Claims 3, 9, 10, 12, 31, 50 and 56 under 35 U.S.C. § 103 as unpatentable over Curran et al. (GB 2250112 - 5/27/92) in view of Brown (Using Netscape 2 - Special Edition). (Since Claim 12 was previously rejected as being anticipated by the teaching of Curran et al., and since no rationale for the rejection of Claim 12 is provided below, Claim 12 was apparently erroneously included in the above list; therefore, Applicant has disregarded the above-indicated

- 17 -

NR-CORE000654

JA00171

rejection of Claim 12 under 35 U.S.C. § 103.)  The Examiner
stated:

> As per claims 3/50, 9/56, 10/31:  The rationales for
> rejection of claims 2/49 are incorporated herein.
>
> Curran et al. don't discuss a means for determining if
> a display is hidden by other images.
>
> However, Brown suggests that a means/instruction(s) for
> comparing/evaluating/determining if a display is hidden
> by other images (see Brown, pp. 616-617, 639, 834-835,
> and 950-951).
> - an image can be a pointer, & means for determine
> times a pointer enter an area (claims 9/56 are
> obvious with Brown's);
> - a content being monitored can be a graphical
> display (claim 10/31 is obvious with Brown's);
>
> Therefore, it would have been obvious to one of
> ordinary skill in the art at the time of invention to
> implement Curran et al.'s system with Brown's
> suggestion because it increases a completeness in
> monitoring a display of content by a computer system.

First, a copy of pages 616, 950 and 951 of the Brown
reference, used to support this rejection of claims, was not
supplied to Applicant by the Examiner.  Therefore, Applicant is
unable to express an opinion regarding the validity of the
Examiner's rejection on that basis.  However, Applicant has
reviewed the pages of the Brown reference provided by the
Examiner with the Office Action (pages 247, 248, 270, 271, 617,
638, 639, 720, 721, 804, 805, 834, 835 and 949).  As explained
below, none of those pages even remotely teach or suggest the
invention as recited in Claims 3, 9, 10, 31, 50 and 56; in fact,
those pages appear to have no relevance at all to any of the
claims of the present application.

Claims 3, 9 and 10 each depend either directly or indirectly
upon Claim 1 and therefore include the limitations of that claim.

- 18 -

NR-CORE000655

JA00172

As explained above, Curran et al. do not teach or suggest a system as recited in Claim 1. Brown does not teach or suggest, either alone or in combination with the teaching of Curran et al., the aspects of Claim 1 that are not taught or suggested by Curran et al. Therefore, Claims 3, 9 and 10 are allowable for at least the reasons given above with respect to Claim 1.

Claims 50 and 56 each depend upon Claim 49 and therefore include the limitations of that claim. As explained above, Curran et al. do not teach or suggest a computer readable medium as recited in Claim 49. Brown does not teach or suggest, either alone or in combination with the teaching of Curran et al., the aspects of Claim 49 that are not taught or suggested by Curran et al. Therefore, Claims 50 and 56 are allowable for at least the reasons given above with respect to Claim 49.

Claim 31 depends upon Claim 30 and therefore includes the limitations of that claim. The Examiner has not identified, in this rejection of Claim 31, where the limitations recited in Claim 30 are taught or suggested by Curran et al. and Brown, either alone or in combination. Therefore, the Examiner has not provided adequate basis for the rejection of Claim 31.

Further, Claims 3 and 50 each recite means or instructions for "determining whether [a] content display is hidden by [o]ne or more other images." It is flatly incorrect to state, as the Examiner has, that "Brown suggests that [sic] a means/instruction(s) for comparing/evaluating/determining if a display is hidden by other images." In general, the Brown reference describes aspects of the use of a World Wide Web

- 19 -

NR-CORE000656

browser. Page 270 of the Brown reference briefly discusses
hidden forms. Page 720 of the Brown reference discusses the use
of background images. Page 721 of the Brown reference discusses
the use of background colors. Page 805 discusses the HIDDEN
input type. Pages 834-835 discuss the use of hidden images.
However, none of this has anything to do with, and clearly does
not suggest, "determining whether [a] content display is hidden
by [o]ne or more other images," as recited in Claims 3 and 50.
The use of the word "hidden" or the word "background" in the
Brown reference does not suggest this limitation of Claims 3
and 50 simply because the word "hidden" is used in reciting that
limitation.

Additionally, Claims 9 and 56 each recite means or
instructions for "determining the number of times that [a]
pointer entered an area defined by [a] content display." None of
the pages of the Brown reference supplied by the Examiner has any
relevance to this limitation. Consequently, there is clearly no
teaching or suggestion by Curran et al. and Brown, either alone
or in combination, of this aspect of Claims 9 and 56.

Further, even assuming arguendo that the Examiner's
assertions regarding the teaching of the Curran et al. patent
application and the Brown reference are correct, there has been
no showing of a suggestion to combine the teaching of those
references, as is necessary to support a rejection based on a
combination of those references. In fact, there would be no
reason why those of skill in the art of developing a capture
device, as Curran et al., would be motivated to look to teaching

- 20 -

NR-CORE000657

JA00174

regarding use of a World Wide Web browser to modify the capture device in some way. The subject matter of the Curran et al. patent application and the subject matter of the Brown reference are from widely disparate fields of art and there is no suggestion to combine the teaching of those references.

In view of the foregoing, it is requested that the rejection of Claims 3, 9, 10, 12, 31, 50 and 56 under 35 U.S.C. § 103 be withdrawn.

The Examiner rejected Claims 4-6, 17, 50-55 and 63 under 35 U.S.C. § 103 as unpatentable over Curran et al. (GB 2250112 - 5/27/92) in view of Brown (Using Netscape 2 - Special Edition) and further in view of Capps (US Pat. 5,634,100). (Since no rationale for the rejection of Claim 50 in view of the above-indicated references was provided in the Office Action, Applicant assumes that the inclusion by the Examiner of Claim 50 in this rejection is erroneous. Additionally, since the Examiner has provided a rationale for the rejection of Claims 7 and 8 in view of the above-indicated references, Applicant assumes that Claims 7 and 8 were erroneously omitted from this rejection by the Examiner.) The Examiner stated:

> The rationales for rejection of claim 3 are incorporated herein.
>
> [Rlef. To claims 4-6, 17, 51-53, 63: Curran et al. don't discuss a means for determining a duration of each time if a display is hidden by other images.
>
> However, Brown obviously suggests there is a means/instructions for determining a duration of each time if a display is hidden by other images (see Brown, pp. 270, 805, 720-721). Furthermore, Capps clearly discloses that fact with Figs. 7 & 10, 12:64-67. The limitation of "...means for determining ...is not

- 21 -

NR-CORE000658

JA00175

hidden .." is easily figure out after solving the first limitation.

Ref. To claims 7/54, 8/55: The examiner submits that claim 7/54 is a combination of claims 4-6.  And claim 8/55 is a combination of claims 4-7; hence they are rejected with similar rationales.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of invention to implement Curran et al. 's system with Brown & Capps 's suggestions because it increases a completeness in monitoring a display of content by a computer system.

Claims 4-8 each depend indirectly upon Claim 1 and therefore include the limitations of that claim.  As explained above, Curran et al. do not teach or suggest a system as recited in Claim 1.  Neither Brown nor Capps teach or suggest, either alone or in combination with each other and/or the teaching of Curran et al., the aspects of Claim 1 that are not taught or suggested by Curran et al.  Therefore, Claims 4-8 are allowable for at least the reasons given above with respect to Claim 1.

Claim 17 depends upon Claim 13 and so includes the limitations of that claim.  The Examiner has not identified, in this rejection of Claim 17, where the limitations recited in Claim 13 are taught or suggested by Curran et al., Brown and Capps, either alone or in combination.  Therefore, the Examiner has not provided adequate basis for the rejection of Claim 17.

Claims 51-55 each depend indirectly upon Claim 48 and therefore include the limitations of that claim.  As explained above, Curran et al. do not teach or suggest a computer readable medium as recited in Claim 48.  Neither Brown nor Capps teach or suggest, either alone or in combination with each other and/or the teaching of Curran et al., the aspects of Claim 48 that are

- 22 -

NR-CORE000659

JA00176

not taught or suggested by Curran et al. Therefore, Claims 51-55 are allowable for at least the reasons given above with respect to Claim 48.

Claim 63 depends upon Claim 59 and so includes the limitations of that claim. The Examiner has not identified, in this rejection of Claim 63, where the limitations recited in Claim 59 are taught or suggested by Curran et al., Brown and Capps, either alone or in combination. Therefore, the Examiner has not provided adequate basis for the rejection of Claim 63.

Claims 4, 5, 7, 8, 51, 52, 54 and 55 each recite means or instructions for determining the duration of each time or the total time that a content display is either fully hidden, partially hidden or not hidden by another image. The Examiner contended that "Brown obviously suggests there is a means/instructions for determining a duration of each time if a display is hidden by other images" and that "Capps clearly discloses that fact with Figs. 7 & 10, 12:64-67." Neither of these contentions is correct. As discussed above, Brown does not at all teach or suggest anything about determining whether, and, if so, for how long, a content display is hidden by another image. Further, the section of the Capps patent cited by the Examiner also is irrelevant to the subject matter of these claims. Capps teaches (column 12, lines 62-67):

> [A] variable TIED can be set to a value of either TRUE
> or FALSE thereby indicating whether the event start
> time 270 and the event stop time 272 are tied together.
> This variable may be, in some form, available for
> setting by the user, or may be hidden from the user and
> predetermined by a software developer implementing the
> present invention.

- 23 -

NR-CORE000660

JA00177

As even a cursory reading of the above-quoted section of the Capps patent shows, Capps does not teach or suggest anything regarding a determination of whether, and, if so, for how long, a content display is hidden by another image. The cited section of Capps simply doesn't have anything to do with the subject matter of this invention.

Claims 6 and 53 each recite means or instructions for "determining whether the content display is fully hidden or partially hidden by the one or more other images." The Examiner has not addressed this limitation at all in his rationale for rejecting these claims. Therefore, the Examiner has not provided adequate basis for the rejection of Claims 6 and 53. Further, as made clear by the discussion elsewhere herein, neither Curran et al., Brown nor Capps, either alone or in combination, teach or suggest anything relevant to the above-indicated limitation recited in Claims 6 and 53.

Claims 17 and 63 each recite means or instructions for "determining the duration of the display of [c]ontent." Again, the Examiner has not addressed this limitation at all in his rationale for rejecting these claims, and has, therefore, not provided adequate basis for the rejection of Claims 17 and 63. Further, as made clear by the discussion elsewhere herein, neither Curran et al., Brown nor Capps, either alone or in combination, teach or suggest anything relevant to the above-indicated limitation recited in Claims 17 and 63.

- 24 -

NR-CORE000661

JA00178

In view of the foregoing, it is requested that the rejection of Claims 4-8, 17, 50-55 and 63 under 35 U.S.C. § 103 be withdrawn.

The Examiner rejected Claims 13, 29, 34, 59, 61, 62 and 65 under 35 U.S.C. § 103 as unpatentable over Curran et al. (GB 2250112 - 5/27/92) in view of Brown (Using Netscape 2 - Special Edition) and further in view of Capps (US Pat. 5,634,100) and Lucero et al. (US Pat. 4,283,709). (Though no reasons are given for the rejection of Claim 61, Applicant assumes that Claim 61 is rejected for reasons similar to those given in the Office Action for the rejection of Claims 15, 16, 32, 62, 64 and 65. Further, since the Examiner has provided a rationale for the rejection of Claims 14, 16 and 60 in view of the above-indicated references, Applicant assumes that Claims 14, 16 and 60 were erroneously omitted from this rejection by the Examiner. Additionally, though the Examiner has referred to Claims 15 and 64 in the rationale for this rejection of claims, Applicant assumes that such reference is erroneous in view of the failure to discuss the limitations of Claims 15 and 64 and in view of the previous rejection of Claims 15 and 64 under 35 U.S.C. § 102. Similarly, though the Examiner has referred to Claim 32 in the rationale for this rejection of claims, Applicant assumes that such reference is erroneous in view of the failure to discuss the limitations of Claim 32 and in view of the additional rejection of Claim 32

- 25 -

NR-CORE000662

JA00179

under 35 U.S.C. § 103 below.)  The Examiner stated:

> Curran et al. discuss about monitoring displays on
> computer system (using instructions for monitoring and
> evaluating displays), wherein contents are inherently
> displayed in response to instructions that is provided
> from external sources.  They failed to teach means for
> ascertaining a beginning/an end of a display and a
> relationship between them.
>
> However, Lucero et al. ('709) obviously suggests these
> missing features (see Lucero et al. 10:38-45, and
> 14:23-37).  Furthermore, Capps ('100) (suggests that
> fact with Figs. 8, 10, 18, and 12:64-67, 13:49-57,
> 16:56-64).
>
> Ref. To claims 14/60:  The examiner submits that an
> instruction is provided by a user of the system is
> obvious in Curran et al. invention.
>
> Ref. To claims 15-16, 32, 62, 64-65:  The examiner
> submits that these claims are a combination of rejected
> claims 1 & 2; hence similar rationales are applied.
>
> Therefore, it would have been obvious to one of
> ordinary skill in the art at the time of invention to
> implement Curran et al.'s system with Brown, Lucero et
> al. & Capps's suggestions because it increases a
> completeness in monitoring a display of content by a
> computer system.

Claims 13, 29, 34 and 59 each recite either means or

instructions for "ascertaining the beginning of a display of the

content," "ascertaining the end of a display of the content,"

"[beginning monitoring] when the beginning of a display of the

content is ascertained," and "[ending monitoring] when the end of

a display of the content is ascertained."  The Examiner contended

that "Lucero et al. ('709) obviously suggests [means for

ascertaining a beginning/an end of a display and a relationship

between them] (see Lucero et al. 10:38-45, and 14:23-37)" and

that "Capps ('100) (suggests that fact with Figs. 8, 10, 18, and

12:64-67, 13:49-57, 16:56-64)."  First, none of Claims 13, 29, 34

- 26 -

NR-CORE000663

JA00180

and 59 recite anything about a relationship between the beginning and end of a display, so it is inapposite whether Lucero et al. or Capps teach anything about such a relationship. Further, Applicant has reviewed the sections of the Lucero et al. and Capps patents identified by the Examiner. None of the sections identified by the Examiner in any way teaches or suggests the above-indicated limitations recited in Claims 13, 29, 34 and 59, the only apparent relationship between those sections of the Lucero et al. and Capps patents and Claims 13, 29, 34 and 59 being that those sections occasionally use the words "beginning" and "end," words which are also found in Claims 13, 29, 34 and 59.

Additionally, Claims 29 and 34 depend upon Claims 18 and 30, respectively, and so include the limitations of those claims. The Examiner has not identified, in the instant rejections of Claims 29 and 34, where the limitations recited in Claims 18 and 30 are taught or suggested by Curran et al., Brown, Capps and Lucero et al., either alone or in combination. For this reason, therefore, the Examiner has not provided adequate basis for the rejections of Claims 29 and 34.

Claims 14 and 16 each depend upon Claim 13 and so are allowable as dependent on an allowable claim. Further, Claims 60-62 each depend upon Claim 59 and so are allowable as dependent on an allowable claim.

The Examiner stated that Claims 15, 16, 32, 62, 64 and 65 are a combination of rejected Claims 1 and 2 and are therefore rejected for reasons similar to those given for rejecting

- 27 -

NR-CORE000664

JA00181

Claims 1 and 2. For reasons given above, Applicant has assumed
that Claims 15, 32 and 64 were erroneously referred to by the
Examiner. Nevertheless, the Examiner's statement regarding
Claims 16, 62 and 65 is obviously incorrect (as is it is with
respect to Claims 15, 32 and 64), as the Examiner will appreciate
from re-reading Claims 16, 62 and 65. A coincidence between the
limitations of Claims 1 or 2 and any of Claims 16, 62 and 65 does
not exist. In fact, none of the limitations recited in Claims 1
and 2 are recited in Claims 16, 62 and 65, and vice versa. Since
the Examiner has provided no basis for the rejection of
Claims 16, 62 and 65, those claims are allowable.

In view of the foregoing, it is requested that the rejection
of Claims 13, 14, 16, 29, 34, 59-62 and 65 under 35 U.S.C. § 103
be withdrawn.

The Examiner rejected Claims 18-30, 32, 33 and 35-41
under 35 U.S.C. § 103 as unpatentable over Curran et al. (GB
2250112 - 5/27/92) in view of Brown (Using Netscape 2 - Special
Edition). The Examiner stated:

> The rationales for rejection of claim 1 are
> incorporated herein.
>
> Curran et al. do not clearly teach that "means for
> transferring data (means for monitoring) between sites
> in response to a signal (a transfer of data) from a
> provider site".
>
> However, Brown (Using Netscape 2 - Special Edition)
> obviously suggests that feature, and features in claims
> 38-41.
>
> Furthermore, the examiner submits that claim 23 is
> obvious in LAN/WAN for relaying messages; and it is
> inherent in Netscape to predict displays of many
> icons/fonts/shape (conclusions may be deduced regarding
> the observation of the content - claim 26);

- 28 -

NR-CORE000665

JA00182

Claim 27/32 is a combination of claim 1 and 21; hence rationales for rejection is applied similarly;

Claim 28/33 is similar to claim 11; hence rationales for rejection is applied similarly;

It would have been obvious to one of ordinary skill in the art at the time of invention to implement Brown's suggestion in Curran et al. invention, because this is a well-known feature in data transfer area.

Since none of Claims 18-30, 32, 33 and 35-41 depend upon Claim 1, the Examiner's statement that "[t]he rationales for rejection of claim 1 are incorporated herein" is inapposite.

Claim 18 recites "means for transferring [m]eans for monitoring from [a] content provider site to [a] content display site in response to the transfer of content from a content provider site." The Examiner stated that "Curran et al. do not clearly teach that [sic] 'means for transferring data (means for monitoring) between sites in response to a signal (a transfer of data)' from a provider site'," but that "Brown ... obviously suggests that feature." Assuming arguendo that it is true that Brown teaches means for transferring data between sites in response to a signal from a provider site, this still does not provide a basis for rejecting Claim 18. Claim 18 recites transferring means for monitoring from the content provider site. "Means for monitoring" is not just "data," as contended by the Examiner. Similarly, Claim 18 recites that the means for monitoring is transferred in response to the transfer of content from a content provider site. "Content" is not just "a signal," as contended by the Examiner. The Examiner has failed to show how the specific limitations of Claim 18 are taught or suggested

- 29 -

NR-CORE000666

JA00183

by the cited references.

Claims 19-29 each depend either directly or indirectly upon Claim 18 and so are allowable as dependent on an allowable claim. Additionally, the Examiner has made only irregular attempts to show that the limitations recited in Claims 19-29 are taught or suggested by the cited references: there is no mention whatsoever of Claims 19-22, 24, 25 and 29 in the rationale provided by the Examiner for rejecting Claims 19-29. Thus, the Examiner has failed to provide an adequate basis for rejecting those claims.

The Examiner has not provided any indication whatsoever of where the limitations recited in Claim 30 are taught or suggested by the cited references and has, therefore, failed to provide an adequate basis for rejecting Claim 30. In particular, the cited references do not teach or suggest, either alone or in combination, "transferring [a] means for monitoring from [a] content provider site to [a] content display site so that the means for monitoring operates at the content provider site," or, more particularly, doing so where the content display site and content provider site are part of a "network [that] operates according to a protocol that enables new content to be transferred to [the] content display site in response to selection of a portion of the content currently being displayed at the content display site," as recited in Claim 30.

- 30 -

NR-CORE000667

JA00184

Claims 32, 33 and 35 each depend upon Claim 30 and so are allowable as dependent on an allowable claim. Further, at least the limitations recited in Claims 32 and 33 are neither taught nor suggested by Curran et al. or Brown, either alone or in combination.

The Examiner has not provided any indication whatsoever of where the limitations recited in Claim 36 are taught or suggested by the cited references and has, therefore, failed to provide an adequate basis for rejecting Claim 36. In particular, the cited references do not teach or suggest, either alone or in combination, "means for transferring [m]onitoring information from [a] content display site to a remote site of [a] computer network that is different from [a] content provider site," as recited in Claim 36.

Claims 37-41 each depend either directly or indirectly upon Claim 36 and so are allowable as dependent on an allowable claim. Further, the Examiner has not provided any indication whatsoever of where the limitations recited in Claim 37 are taught or suggested by the cited references and has, therefore, failed to provide an adequate basis for rejecting Claim 37. Additionally, the limitations recited in Claims 37-41 are neither taught nor suggested by Curran et al. or Brown, either alone or in combination. The Examiner's statement that "Brown obviously suggests ... features in claims 38-41" is incorrect and has not been supported by the Examiner by identification of parts of the Brown reference that teach or suggest those features.

- 31 -

NR-CORE000668

JA00185

In view of the foregoing, it is requested that the rejection of Claims 18-30, 32, 33, 35-41 under 35 U.S.C. § 103 be withdrawn.

The Examiner rejected Claims 42-47 under 35 U.S.C. § 103 as unpatentable over Curran et al. (GB 2250112 - 5/27/92) in view of Brown (Using Netscape 2 - Special Edition) and further in view of Cannon et al. (US Pat. 5,673,382). The Examiner stated:

> The rationales for rejection of claims 1, 18, 21, and 25 are incorporated herein.
>
> Claim 42 is a combination of claim 1, 18, 21, and 25; hence rationales for rejection is applied similarly;
>
> Claim 43 further having limitations which can be rejected based on Cannon et al.'s disclosure ('382 5:23-60);
>
> It would have been obvious to one of ordinary skill in the art at the time of invention to implement Brown's suggestion, and Cannon et al. disclosure in Curran et al. invention, because these are well-known limitations in data transfer area.

The Examiner contends that "Claim 42 is a combination of claim 1, 18, 21, and 25" and that, therefore, the "rationales for rejection is [sic] applied similarly." None of the limitations recited in Claim 42 are found in Claims 1, 18, 21, and 25, and vice versa. Consequently, the Examiner has completely failed to provide a basis for the rejection of Claim 42 and Claim 42 is therefore allowable.

Claims 43-47 each depend upon Claim 42 and therefore include the limitations of that claim. Since the Examiner has failed to provide any basis for the rejection of Claim 42, the rationale for rejecting Claims 43-47 is similarly lacking. Further, the Examiner has not even discussed the limitations present in

- 32 -

NR-CORE000669

JA00186

Claims 44-47: it is therefore improper to maintain a rejection of those claims.

In view of the foregoing, it is requested that the rejection of Claims 42-47 under 35 U.S.C. § 103 be withdrawn.

<u>CONCLUSION</u>

Claims 1-66 are pending and were rejected. Claims 8, 30, 59 and 64 have been amended. In view of the foregoing, it is requested that Claims 1-66 be allowed. If the Examiner wishes to discuss any aspect of this application, the Examiner is invited to telephone Applicant's undersigned attorney at (408) 945-9912.

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231, on <u>June 3, 1999</u>.

<u>6-3-99</u>    <u>David R. Graham</u>
Date        Signature

Respectfully submitted,

David R. Graham
Reg. No. 36,150
Attorney for Applicant

- 33 -

NR-CORE000670

JA00187

# TAB O



UNITED STATES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/707,279 | 09/03/96 | BLUMENAU | T | 102506-1100 |

LM02/0817

DAVID R GRAHAM
1337 CHEWPON AVENUE
MILPITAS CA 95035

| | EXAMINER |
|---|---|
| | NGUYEN, C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2764 | |

DATE MAILED: 08/17/99

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

NR-CORE000671

JA00188

| *Office Action Summary* | Application No. 08/707,279 | Applicant | **BLUMENAU** |
|---|---|---|---|
| | Examiner Cuong H. Nguyen | Group Art Unit 2764 | |

☒ Responsive to communication(s) filed on _6/07/99 (the amendment)._

☐ This action is FINAL.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire _____3_____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) _1-66_ _____ is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) _1-66_ _____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☒ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) _____ .

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____ .

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☐ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☐ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

*— SEE OFFICE ACTION ON THE FOLLOWING PAGES —*

U. S. Patent and Trademark Office
PTO-326 (Rev. 9-95)          Office Action Summary          Part of Paper No. __11__

NR-CORE000672

JA00189

Serial Number: 08/707,279
Art Unit: 2764

### DETAILED ACTION

1.    This Office Action is in response to the amendment received on 6/07/99, which paper has been placed of record in the file.

2.    Claims **1-66** are pending in this application.

### Response:

3.    The examiner withdraws the previous objections, and the rejections on 35 U.S.C. 102, 103, and 112 2nd paragraph (claim 12) due to the amendment.  Claim 66 is still rejected on 35 USC 101 because of the reason(s) (underlined) addressing below.

4.    Applicant's arguments have been fully considered but they are not persuasive with different grounds of rejection. Therefore, the arguments on 35 U.S.C. 102, 103 are moot.  The preamble of the claims are directed to monitoring displays by computer; therefore, a computer system must be used to perform that monitoring.

### *Specification Objection*

5.    The disclosure is objected to because of the following informality:

The title of the invention is not descriptive.  A new title is required that is clearly indicative of the invention to which the claims are directed.

3

NR-CORE000673

JA00190

Serial Number: 08/707,279
Art Unit: 2764

The following title is suggested: "Content display monitoring by a computer system" (because the specification is directed toward monitoring contents using computer system).

Appropriate correction is required.

The following rejections are based on the examiner's best interpretation of the claims.

### Claim Rejections - 35 USC § 101

6.   35 U.S.C. 101 reads as follows:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title.

Claim 66 is still rejected under 35 U.S.C. 101 because this claim is directed to a non-statutory subject matter for computer-related inventions.  The non-statutory subject matter of the claim is: i.e. A method for monitoring displays, comprising monitoring & evaluating display positions of contents ...; it comprises only abstract computer instructions for monitoring & evaluating (not provided); there is no pre/post computer process activity.   This method does not perform independent physical acts/pre-computer process/post-computer process (it must rely on a execution/control of a computer system/network) or manipulate data (which are not disclosed) representing physical objects to

4

NR-CORE000674

JA00191

Serial Number: 08/707,279
Art Unit: 2764

achieve a practical application; in contrast, it merely

manipulates abstract ideas without any limitation to a specific

practical application (in this claims -- emphasis added).

The applicant asserts that it is incorrect that the method

of claimm 66 "does not ... manipulate data...". The examiner

maintains that claim 66 does not manipulate data because it

merely suggest a method for monitoring displays; steps as

monitoring, and evaluating positions do not indicate real data in

this claim.

### Claim Rejections - 35 USC § 112

7.    The following is a quotation of the first paragraph of 35

U.S.C. 112:

> The specification shall contain a written description of the
> invention, and of the manner and process of making and using
> it, in such full, clear, concise, and exact terms as to enable
> any person skilled in the art to which it pertains, or with
> which it is most nearly connected, to make and use the same
> and shall set forth the best mode contemplated by the inventor
> of carrying out his invention.

A.    Claims 1, 11, 13, 18, 30, 36, 42, 48, 57, 59,

64-66 rejected under 35 U.S.C. 112, first

paragraph, as containing subject matter which was

not described in the specification in such a way

as to reasonably convey to one skilled in the

relevant art that the inventor(s), at the time the

application was filed, had possession of the

5

NR-CORE000675

JA00192



Serial Number: 08/70...
Art Unit: 2764

claimed inv... the applicant doesn't provide

the means... instruction codes) for

monitoring/entering displays/characteristic of

displays/ascertaining a beginning (end) of

displays/transferring in the specification.

B.    The remaining claims (2-10, 12, 14-17, 19-29,

31-35, 37-41, 43-47, 49-56, 58, 60-63), not

specifically mentioned, are rejected for

incorporating the above defects from their

respective parent claims by dependency.

8.    The following is a quotation of the second

paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims
particularly pointing out and distinctly claiming the subject
matter which the applicant regards as his invention.

A.    Claim 1, 11, 13, 18, 30, 36, 48, 57, 59, 64-66 are rejected

under 35 U.S.C. § 112, second paragraph because they recite the

limitation "monitoring the display", "enabling the monitoring of

the display" in claims' preambles.    There are insufficient

antecedent basis for these limitations in the claims.

B.    The remaining claims (2-10, 12, 14-17, 19-29, 31-35, 37-41,

49-56, 58, 60-63), not specifically mentioned, are rejected for

6

NR-CORE000676

JA00193

Serial Number: 08/
Art Unit: 2764

incorporating the abovedefects from their respective parent

claims by dependency.

*Conclusion*

10. Claims 1-66 are rejected.

11. Any inquiry concerning this communication or earlier

communications from the examiner should be directed to examiner

Cuong H. Nguyen, whose telephone number is (703)305-4553. The

examiner can normally be reached on Monday-Friday from 7:00

AM-4:30 PM.

If attempts to reach the examiner by telephone are

unsuccessful, the examiner's supervisor, James P. Trammell, can

be reached on (703)305-5768.

Any response to this action should be mailed to:

Box Issue Fee                    Amendments

Commissioner of Patents and Trademarks

c/o Technology Center 2700

Washington, D.C. 20231

or faxed to:    (703) 305-9051, (for formal communications

intended for entry)

Or:        (703) 305-0040  (for informal or draft communications,

please label "PROPOSED" or "DRAFT")

7

NR-CORE000677

JA00194

Serial Number: 0
Art Unit: 2764

Hand-delivered responses should be brought to Crystal Park II, 2121 Crystal Drive, Arlington, VA - Sixth Floor (Receptionist).

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is 305-3900.

Cuong H. Nguyen
August 15, 1999

James P. Trammell
Supervisory Patent Examiner
Technology Center 2700

8

NR-CORE000678

JA00195

## FAX TRANSMISSION COVER SHEET    Unofficial

October 15, 1999

---

CONFIDENTIAL ADVISORY:
The information contained in this facsimile may be Attorney-Client privileged and confidential information intended for the individual or entity named below. Any other review, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is intended for you, please immediately notify me by collect telephone at (408) 945-9912, and return the original message to me via the U.S. Postal Service at my expense at the following address:  1337 Chewpon Ave., Milpitas, CA 95035.

---

| To: | Firm/Company/Telephone: | Fax Number: |
|---|---|---|
| Examiner Cuong Nguyen | (703) 305-4553<br>Group Art Unit 2764<br>U.S.P.T.O. | (703) 305-0040 |

From: David R. Graham, Esq.                    Client-Matter Number:  BLU-001

Re:   Proposed amendment in U.S. Patent          Pages:  - 17 -  (including this
      Application Serial No. 08/707,279          form)

          Original:    ☐ will be mailed     ☒ will not be mailed

If there is a problem with this transmission, please call  (408) 945-9912.
                                                        Fax Operator/Ext.

Message:

********************************* PROPOSED ****************************************

PLEASE DELIVER THE FOLLOWING DIRECTLY TO:

EXAMINER CUONG NGUYEN
GROUP ART UNIT 2764

******************************** PROPOSED ****************************************




**FAX RECEIVED**

OCT 18 1999

Group 2700

NR-CORE000679

JA00196

# TAB P

OCT-15-99 01:22 PM  David R. Graham, Esq.    40☐ 885 1939        P.02

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:        Trevor Blumenau

Assignee:        Nielsen Media Research, Inc. and Internet Profiles
                 Corporation

Title:           Content Display Monitor

Serial No.:      08/707,279    Filed:  September 3, 1996

Examiner:        C. Nguyen      Group Art Unit:  2764

Attorney Docket No.:  BLU-001 (formerly 102506-1100US)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Milpitas, California
October 15, 1999

Box Non-Fee Amendment
Assistant Commissioner for Patents
Washington, D.C. 20231

*Proposed*

RESPONSE TO OFFICE ACTION

Sir:

    Please enter the following response to the Office Action
dated August 17, 1999, in the above-identified application.


### IN THE SPECIFICATION

    At page 16, line 21, delete "computer".

    At page 44, line 33, delete "FIG. 5" and substitute

                    --FIGS. 5A, 5B and 5C--.

    At page 46, line 7, delete "FIGS" and substitute --FIGS.--.

    At page 47, line 28, delete "FIG. 5" and substitute

                    --FIGS. 5A, 5B and 5C--.

    At page 48, line 17, delete "FIG. 5" and substitute

                    --FIGS. 5A, 5B and 5C--.





NR-CORE000680

JA00197

line 21, delete "FIG. 6" and substitute

--FIGS. 6A, 6B, 6C and 6D--.

### IN THE CLAIMS

Please cancel Claim 66.

Please amend the claims as follows:

1. (Amended) A system for monitoring [the] display of content by a computer system, comprising:

means for monitoring the position of [the] a content display on a display screen of the computer system; and

means for evaluating the position of the content display on the display screen to produce monitoring information regarding display of the content.

11. (Amended) A system for monitoring [the] display of content by a computer system, comprising:

means for monitoring the change in time of a characteristic of [the] a content display; and

means for evaluating the change in time of the characteristic of the content display to produce monitoring information regarding display of the content.

13. (Amended) A system for monitoring [the] display of content by a computer system, wherein the content is displayed in response to an instruction that is provided from a source external to the computer system and the system for monitoring,

- 2 -

NR-CORE000681

JA00198

comprising:

     means for ascertaining the beginning of a display of the content;

     means for ascertaining the end of a display of the content; and

     means for monitoring [the] display of the content, wherein:

     the means for monitoring begins operating when the beginning of a display of the content is ascertained; and

     the means for monitoring stops operating when the end of a display of the content is ascertained.

    (18.)  (Amended) A system for monitoring [the] display at a content display site of content that is provided by a content provider site over a network to the content display site, comprising:

     means for monitoring [the] display of the content to produce monitoring information regarding display of the content; and

     means for transferring the means for monitoring from the content provider site to the content display site in response to the transfer of content from a content provider site.

- 3 -

NR-CORE000682

29.   (Amended) A system as in Claim 18, wherein:

the content is displayed in response to an instruction that is provided from a source external to the [computer] network and the system for monitoring; and

the means for monitoring further comprises:

means for ascertaining the beginning of a display of the content; and

means for ascertaining the end of a display of the content, wherein:

the means for monitoring begins operating when the beginning of a display of the content is ascertained; and

the means for monitoring stops operating when the end of a display of the content is ascertained.

30.   (Twice Amended) A system for monitoring [the] display at a content display site of content that is provided by a content provider site over a network to the content display site, wherein the network operates according to a protocol that enables new content to be transferred to a content display site in response to selection of a portion of [the] content currently being displayed at the content display site, the system comprising:

means for monitoring the display of [the] content to produce monitoring information regarding display of the content; and

- 4 -

NR-CORE000683

JA00200

means for transferring the means for monitoring from the content provider site to the content display site so that the means for monitoring operates at the content display site.

34.    (Amended) A system as in Claim 30, wherein:

the content is displayed in response to an instruction that is provided from a source external to the [computer] network and the system for monitoring; and

the means for monitoring further comprises:

means for ascertaining the beginning of a display of the content; and

means for ascertaining the end of a display of the content, wherein:

the means for monitoring begins operating when the beginning of a display of the content is ascertained; and

the means for monitoring stops operating when the end of a display of the content is ascertained.

36.    (Amended) A system for monitoring [the] display at a content display site of content that is provided by a content provider site over a network to the content display site, comprising:

means for monitoring [the] display of the content to produce monitoring information regarding display of the

- 5 -

NR-CORE000684

JA00201

content; and

        means for transferring the monitoring information from
the content display site to a remote site of the [computer]
network that is different from the content provider site.


    40.    (Amended) A system as in Claim 38, wherein:
        the [computer] network includes a plurality of content
provider sites; and
        the means for storing monitoring information at the
remote site is adapted to enable storage of monitoring
information regarding the display of content [at each of]
provided from the plurality of content provider sites.


    (48)    (Amended) A computer readable medium encoded with one
or more computer programs for enabling [the] monitoring of the
display of content by a computer system, comprising:
        instructions for monitoring the position of [the] a
content display on a display screen of the computer system;
and
        instructions for evaluating the position of the content
display on the display screen to produce monitoring
information regarding display of the content.


    (57)    (Amended) A computer readable medium encoded with one
or more computer programs for enabling [the] monitoring of the
display of content by a computer system, comprising:
        instructions for monitoring the change in time of a

                            - 6 -

NR-CORE000685

JA00202

characteristic of [the] a content display; and

instructions for evaluating the change in time of the characteristic of the content display to produce monitoring information regarding display of the content.

59.) (Twice Amended) A computer readable medium encoded with one or more computer programs for enabling [the] monitoring of [the] display of content by a computer system, for use with a computer system in which [the] content is displayed in response to a content display instruction that is provided from a source external to the computer system and not part of the monitoring computer program or programs, comprising:

instructions for ascertaining the beginning of a display of [the] content;

instructions for ascertaining the end of a display of the content; and

instructions for monitoring [the] display of the content, wherein:

the instructions for monitoring begin executing when the beginning of a display of the content is ascertained; and

the instructions for monitoring stop executing when the end of a display of the content is ascertained.

- 7 -

NR-CORE000686

(64) (Twice Amended) A computer readable medium encoded with one or more computer programs for enabling [the] monitoring of [the] display of content by a computer system, comprising:

instructions for causing [the] content to be displayed by the computer system; and

instructions for monitoring [the] display of content by the computer system to produce monitoring information regarding the display of the content, wherein the monitoring instructions are integrated with the display instructions such that execution of the display instructions causes execution of the monitoring instructions.

(65) (Amended) A computer readable medium encoded with one or more computer programs for enabling [the] monitoring of [the] display of content at a content display site, comprising:

instructions, adapted for use at the content display site, for monitoring [the] display of content at the content display site to produce monitoring information regarding display of the content; and

instructions for receiving monitoring information from the content display site.

- 8 -

NR-CORE000687

JA00204

## REMARKS

### Objection to the Specification

The Examiner objected to the specification.  The Examiner
stated:

> The title of the invention is not descriptive.  A new
> title is required that is clearly indicative of the
> invention to which the claims are directed.

> The following title is suggested:  "Content display
> monitoring by a computer system" (because the
> specification is directed toward monitoring contents
> using computer system).

Applicant contends that the present title of the application
is clearly indicative of Applicant's invention and, further, that
the title suggested by the Examiner may indicate that the
invention is limited in a way in which it need not necessarily
be, i.e., to use with a computer system.  For example, none of
Claims 18-47 and 65 are limited to use with a computer system.
Additionally, Applicant's specification states, at page 12,
lines 8-20:

> The invention can enable monitoring of the display of
> content by a computer system.  ...  The invention can
> also enable monitoring of the display at a content
> display site of content that is provided by a content
> provider site over a network to the content display
> site.  Additionally, the invention can enable the
> expeditious provision of updated and/or tailored
> content over a network from a content provider site to
> a content display site so that the content provider's
> current and appropriately tailored content is always
> displayed at the content display site.

As can be seen, the last two of the three aspects of Applicant's
invention described above are not limited to use with a computer
system or a computer network.  Further, as stated in Applicant's
specification at page 12, lines 21-22, "[a]spects of the

- 9 -

NR-CORE000688

invention related to transfer of content over a network are
generally applicable to any type of network" (emphasis added),
though, as Applicant's specification goes on to state at page 12,
lines 23-24, "it is contemplated that the invention can be
particularly useful with a computer network." Therefore, in view
of the foregoing, Applicant has not amended the title.

## Rejection of Claims and Summary of Response

Claims 1-66 are pending. Claim 66 was rejected under
35 U.S.C. § 101. Claims 1-66 were rejected under
35 U.S.C. § 112. Claim 66 has been canceled. Claims 1, 11, 13,
18, 29, 30, 34, 36, 40, 48, 57, 59, 64 and 65 have been amended.
Reconsideration and allowance of Claims 1-65 is requested.

## Rejection of Claims under 35 U.S.C. § 101

The Examiner rejected Claim 66 under 35 U.S.C. § 101.
Claim 66 has been canceled, thereby obviating this rejection of
Claim 66.

- 10 -

NR-CORE000689

JA00206

## Rejection of Claims under 35 U.S.C. § 112

The Examiner rejected Claims 1-66 under 35 U.S.C. § 112, first paragraph. The Examiner stated:

> [Claims 1-66 contain] subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention. The applicant doesn't provide the means (computer instruction codes) for monitoring/evaluating displays/characteristic of displays/ascertaining a beginning (end) of displays/transferring in the specification.

Applicant interprets the Examiner's statement above to mean that an application directed to an invention that can be implemented using computer program(s) must include computer program code listing(s) in order to satisfy the "enablement" requirement of 35 U.S.C. § 112, first paragraph, i.e., that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same ...." It is well established that this is not the case.

As stated in MPEP § 2106.01 (see page 2100-26), "[w]hen basing a rejection on the failure of the applicant's disclosure to meet the enablement provisions of the first paragraph of 35 U.S.C. 112, the examiner must establish on the record that he has a reasonable basis for questioning the adequacy of the disclosure to enable a person of ordinary skill in the art to make and use the claimed invention without resorting to undue experimentation.

- 11 -

NR-CORE000690

JA00207

[Citations omitted.]"  As further stated in MPEP § 2106.02 (see page 2100-26), "[t]o establish a reasonable basis for questioning the adequacy of a disclosure, the examiner must present a factual analysis of a disclosure to show that a person skilled in the art would not be able to make and use the claimed invention without resorting to undue experimentation."  The Examiner has not provided such a factual analysis in the instant Office Action. Nevertheless, to facilitate further prosecution of this application and illustrate the sufficiency of the description in the application of the claimed invention, Applicant indicates below how the application provides a description that enables a person of ordinary skill in the art to make and use the claimed invention without resorting to undue experimentation.

As described in Applicant's specification at page 22, lines 3-18, aspects of the invention can be implemented, for example, as one or more computer programs, written in the Java programming language, that can execute on any type of computer. Further, as described in Applicant's specification at page 22, lines 26-27, such computer program(s) can be an applet written in the Java programming language.  One of skill in the art of writing computer programs in the Java programming language and, if appropriate for the system being implemented, with knowledge of relevant operating system characteristics (as could easily be obtained by such skilled person) can readily write such applets in view of the detailed description in Applicant's specification of various aspects of Applicant's invention (as discussed further below), particularly since many embodiments of Applicant's

- 12 -

NR-CORE000691

JA00208

invention can be implemented relatively simply (see, e.g.,
page 25, line 26 to page 26, line 2 of Applicant's
specification).

For example, embodiments of the invention as recited in
Claims 1-10, Claims 11 and 12, Claims 48-56, and Claims 57 and 58
are described in detail at, for example, page 26, line 20 to
page 32, line 33. An embodiment of the invention as in Claim 1
or Claim 48 is described generally at page 26, lines 20-28 and an
embodiment of the invention as in Claim 11 or Claim 57 is
described generally at page 32, lines 21-33. Particular ways of
implementing such embodiments of the invention are described in
detail at, for example, page 27, line 26 to page 28, line 1;
page 28, lines 2-6; page 28, lines 12-19; page 29, line 19 to
page 30, line 1; and page 31, line 16 to page 32, line 15.

Embodiments of the invention as recited in Claims 13
and 14, and Claims 59 and 60 are described in detail at, for
example, page 22, line 27 to page 23, line 32, and at page 24,
lines 18-26. The additional aspects of the embodiments of the
invention recited in Claims 15 and 16, and Claims 61 and 62 are
described in detail at, for example, the above-indicated parts of
Applicant's specification at which embodiments of the invention
in accordance with Claims 1-12 are described. The additional
aspects of the embodiments of the invention recited in Claim 17
and Claim 63 are described in detail at, for example, page 26,
lines 12-19.

Embodiments of the invention as recited in Claims 18 and 19,
Claims 30 and 31, and Claim 64 are described in detail at, for

- 13 -

NR-CORE000692

example, page 23, line 1 to page 24, line 2 of Applicant's
specification (see especially page 23, lines 25-32). The
additional aspects of the embodiments of the invention recited in
Claims 20 and 21, and Claim 35 are described in detail at, for
example, page 38, lines 26-30. The additional aspect of the
embodiment of the invention recited in Claim 22 is described in
detail at, for example, page 43, lines 16-30. The additional
aspect of the embodiment of the invention recited in Claim 23 is
described in detail at, for example, page 44, lines 4-32. The
additional aspects of the embodiment of the invention recited in
Claim 24 is described in detail at, for example, page 39, line 17
to page 40, line 31. The additional aspect of the embodiment of
the invention recited in Claim 25 is described in detail at, for
example, page 23, lines 23-25. The additional aspects of the
embodiments of the invention recited in Claims 26-29 and
Claims 32-34 are described in detail at, for example, the above-
indicated parts of Applicant's specification at which at which
embodiments of the invention in accordance with Claims 1-14 are
described.

Embodiments of the invention as recited in Claims 36 and 37
are described in detail at, for example, page 43, lines 16-30 of
Applicant's specification. The additional aspects of the
embodiments of the invention recited in Claims 38-40 are
described in detail at, for example, page 44, lines 4-32. The
additional aspect of the embodiment of the invention recited in
Claim 41 is described in detail at, for example, page 43, line 30
to page 44, line 3 and page 44, line 33 to page 45, line 5.

- 14 -

NR-CORE000693

Embodiments of the invention as recited in Claims 42-45 are described in detail at, for example, page 45, line 30 to page 47, line 23 of Applicant's specification. The additional aspects of the embodiments of the invention recited in Claims 46 and 47 are described in detail at, for example, page 47, line 24 to page 48, line 27.

An embodiment of the invention as recited in Claim 65 is described in detail at, for example, page 42, line 23 to page 43, line 30 of Applicant's specification.

In view of the descriptions of embodiments of the invention as discussed above, one of skill in the art of writing computer programs in the Java programming language and, if appropriate for the system being implemented, with knowledge of relevant operating system characteristics can readily make and use systems as claimed by Applicant. Further, some aspects of systems recited in Applicant's claims can be implemented using communications methods (e.g., computer programs) and apparatus that are conventional and well known to those skilled in the art of computer networking.

The Examiner rejected Claims 1-41 and 48-66 under 35 U.S.C. § 112, second paragraph. The Examiner stated that these claims are rejected because they include "the limitation 'monitoring the display', 'enabling the monitoring of the display' in claims' preambles" and therefore "[t]here [is] insufficient antecedent basis for these limitations in the claims."

Applicant has amended Claims 1, 11, 13, 18, 30, 36, 48, 57,

- 15 -

NR-CORE000694

JA00211

59, 64 and 65 to eliminate the occurrences of the definite
article "the" that the Examiner deems problematic.

In view of the foregoing, it is requested that the rejection
of Claims 1-65 under 35 U.S.C. § 112 be withdrawn.  (Claim 66 has
been canceled, thereby obviating the rejections of Claim 66.)

## CONCLUSION

Claims 1-66 were pending and were rejected.  Claim 66 has
been canceled.  Claims 1, 11, 13, 18, 29, 30, 34, 36, 40, 48, 57,
59, 64 and 65 have been amended.  In view of the foregoing, it is
requested that Claims 1-65 be allowed.  If the Examiner wishes to
discuss any aspect of this application, the Examiner is invited
to telephone Applicant's undersigned attorney at (408) 945-9912.

I hereby certify that this correspondence is being
deposited with the United States Postal Service as
first class mail in an envelope addressed to:
Assistant Commissioner for Patents, Washington,
D.C, 20231, on October 15, 1999.

_____  _____
Date          Signature

Respectfully submitted,

David R. Graham
Reg. No. 36,150
Attorney for Applicant

- 16 -

NR-CORE000695

JA00212