IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NETRATINGS, INC.,

Plaintiff,

vs.

COREMETRICS, INC.,

Defendant.

Civil Action No. 05-cv-314-GMS

**NETRATINGS, INC.'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

John W. Shaw (#3362)
Andrew A. Lundgren (#4429)
Karen E. Keller (#4489)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
(302) 571-6600

Frederick L. Whitmer
Seth H. Ostrow
Arianna Frankl
**BROWN RAYSMAN MILLSTEIN FELDER & STEINER LLP**
900 Third Avenue
New York, New York 10022
(212) 895-2000

Dated: August 9, 2006

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................ ii

PRELIMINARY STATEMENT ........................................................ 1

NETRATINGS' PROPOSED CONSTRUCTIONS FOR CERTAIN "INSTRUCTIONS" ELEMENTS OF THE '637 PATENT ........................................................ 1

1. Computer Media Claims ........................................................ 1

2. Instructions Elements Within the Category of Means for Monitoring (rows 2, 4, 6, 12, 14, 16, 18, 21) ........................................................ 3

   (a) Claim 57 (row 2): "instructions for monitoring the change in time of a characteristic of a content display"; Claim 62 (row 4): "instructions for monitoring the change in time of a characteristic of the content display"; Claim 58 (row 6): "instructions for monitoring the change in time of a characteristic of the computer system" ........................................................ 3

   (b) Claim 63 (row 12): "instructions for determining the duration of the display of the content" ........................................................ 5

   (c) Claim 59 (rows 14 and 16): "instructions for ascertaining the beginning of a display of content" and "instructions for ascertaining the end of a display of the content" ........................................................ 5

   (d) Claims 57 and 62 (row 18): "instructions for evaluating the change in time of the characteristic of the content display to produce monitoring information regarding display of the content"; Claim 58 (row 21): "instructions for comparing the change in time of the characteristic of the content display to the change in time of the characteristic of the computer system to produce the monitoring information" ........................................................ 6

   (e) Claim 65 (row 32): "instructions, adapted for use at the content display site, for monitoring display of content at the content display site to produce monitoring information regarding display of the content" ........................................................ 7

3. Instructions Element Within the Category of Transferring (and Receiving) Monitoring Information ........................................................ 8

4. Instructions Element Within the Category of Display of Content ........................................................ 9

CONCLUSION ........................................................ 10

## TABLE OF AUTHORITIES

*Bd. of Regents of the Univ. of Texas Sys. v. Eastman Kodak Co.*, Civ. Action No.: SA-04-CA-912-XR, 2006 U.S. Dist. LEXIS 7997 (W.D. Tex. Jan. 26, 2006) .......... 3

*Creo Prods., Inc. v. Presstek, Inc.*, 166 F. Supp. 2d 944 (D. Del. 2001) .......... 1

*Digeo, Inc. v. Audible, Inc.*, Case No. C05-464JLR, 2006 U.S. Dist. LEXIS 22715 (W.D. Wash. Mar. 27, 2006) .......... 3

McKesson Info. Solutions LLC v. The Trizetto Group, Inc., 426 F. Supp. 2d 197 (D. Del. 2006) .......... 3

*WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339 (Fed. Cir. 1999) .......... 1, 3

## MISCELLANEOUS

Examination Guidelines for Computer-Related Inventions, 61 Fed. Reg. 7,478 (1996) .......... 2

## PRELIMINARY STATEMENT

In accordance with the Court's Order dated August 2, 2006, Docket Item ("D.I.") No. 123, ("Briefing Order"), Plaintiff NetRatings, Inc. ("NetRatings") submits this supplemental brief addressing the asserted "instructions" claim elements of U.S. Patent 6,108,637 (the "'637 patent") as specified in the Briefing Order.

## NETRATINGS' PROPOSED CONSTRUCTIONS FOR CERTAIN "INSTRUCTIONS" ELEMENTS OF THE '637 PATENT

To apply 35 U.S.C. 112(6) to a claim element, the function of such element is first determined, and then the corresponding structure for performing the function as described in the specification is identified. *See WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1347 (Fed. Cir. 1999); *Creo Prods., Inc. v. Presstek, Inc.*, 166 F. Supp. 2d 944, 964 (D. Del. 2001). In the context of claim elements where the disclosed structure is a computer, the structure for such claim elements is the computer, programmed to perform the algorithms disclosed in the specification. *See, e.g., WMS Gaming*, 184 F.3d at 1349.

### 1. Computer Media Claims

All of the instructions elements in the '637 patent, including those at issue in this case, are part of computer media claims. The preamble of each independent claim containing an instruction element begins with the following text (or some slight variant): "A computer readable medium encoded with one or more computer programs" for "enabling monitoring..." '637 patent, claims 57, 59, 64 and 65.[1] Claims 57, 59 and 64 also recite in their preambles that the monitoring is performed by a computer system, and claim 65 recites monitoring performed at a content display site. In other words, the claims themselves specify that there is computer media, containing computer code, which

[1] The corresponding dependent claims (58, 60, 62, 63) inherently have the same preambles as the independent claims from which they depend. (Note that dependent claim 61 has not been asserted in this case).

will be used by a computer system. Computer media claims such as these have been accepted as falling within the patentable subject matter category of an article of manufacture, with the computer media (*e.g.*, a diskette) providing structure to the claims. 35 U.S.C. § 101. *See also Examination Guidelines for Computer-Related Inventions,* 61 Fed. Reg. 7,478, 7481-2 (1996) ("functional descriptive material" "recorded on some computer readable medium" constitutes an article of manufacture).[2] Computer media claims have become common for claiming software products, providing the ability for patent holders to pursue direct infringement claims against software manufacturers and distributors, as opposed to only users of the software.

At a minimum, any identification of structure for the instructions elements should account for the structural features identified in the claims themselves. Accordingly, every construction proffered by NetRatings for "instructions" elements specifies the same base structure, as follows:

> Computer code encoded on a computer readable medium, that, when executed by a computer system, performs the recited function using one or more of the methods [disclosed in the specification sections cited for each element in the chart].[3]

Application of the specification to this base structure for the claim elements at issue is provided below.

---

[2] This is one reason why NetRatings believes these claim elements are not 112(6) candidates in the first instance. *See also NetRatings, Inc.'s Opening Brief on Claim Construction* (D.I. No. 50), at 36-37 (discussing the *Affymetrix* case and its reliance on "computer code" as structure, and collecting sources which confirm that computer instructions are the same as computer code). Indeed, the instructions claim elements in the '637 patent are contrasted with system claim elements (which, not necessarily being articles of manufacture, have a greater rationale for interpretation as means-plus-function elements).

[3] Each identified structure also includes all equivalents thereto. 35 U.S.C. § 112(6).

### 2. Instructions Elements Within the Category of Means for Monitoring (rows 2, 4, 6, 12, 14, 16, 18, 21)

(a) **Claim 57 (row 2): *"instructions for monitoring the change in time of a characteristic of a content display"*; Claim 62 (row 4)*: "instructions for monitoring the change in time of a characteristic of the content display"*; Claim 58 (row 6)*: "instructions for monitoring the change in time of a characteristic of the computer system"***

The function for each of the foregoing (and subsequent) elements is set forth in the element itself.[4] In accordance with *WMS Gaming*, reference to the patent specification to identify the specific algorithms which the computer code is programmed to perform is the appropriate method for construing the structure for these elements. *See WMS Gaming,* 184 F.3d at 1349. This may be done with explicit reference to text or figures within the specification, or by reference to column and line numbers.[5] *McKesson Info. Solutions LLC v. The Trizetto Group, Inc.,* 426 F. Supp. 2d 197, 202 (D. Del. 2006) (identification of structure includes identifying "the specific algorithm disclosed in the specification, or where it is disclosed (or otherwise inferred)"); *Digeo, Inc. v. Audible, Inc.,* Case No. C05-464JLR, 2006 U.S. Dist. LEXIS 22715, at *45-46 (W.D. Wash. Mar. 27, 2006) (identifying algorithm by citation to column and line references of approximately 77 lines of text); *Bd. of Regents of the Univ. of Texas Sys. v. Eastman Kodak Co.,* Civ. Action No.: SA-04-CA-912-XR, 2006 U.S. Dist. LEXIS 7997, at *58 (W.D. Tex. Jan. 26, 2006) (identifying algorithm by citation to two figures).

---

[4] The function for each of the claim elements at issue conforms to the language of each element itself. Each such function is explicitly identified in the applicable row of Table 2 of the Supplemental Claim Construction Chart ("SCCC") being submitted by NetRatings with this brief as Ex. 1.

[5] In its Markman papers, Coremetrics took issue with the list of citations provided by NetRatings to the specification in identifying structure for the means claims in the patent. Putting aside the fact that this is the method used by other courts (as set forth above), that there is a substantial amount of structure disclosed in the '637 specification simply serves to show that broader interpretations of the claims is appropriate – not the narrow constructions proposed by Coremetrics.

To illustrate precisely how the structure for each element would be analyzed (for purposes of trial, for instance), one example of the structure for claim 57 (instructions for monitoring the change in time of a characteristic of a content display) is provided,[6] as follows:

> Computer code encoded on a computer readable medium, that, when executed by a computer system, performs the recited function using one or more of the methods of:
>
> - "discern[ing] whether the pointer is located within the content display by monitoring an event that indicates that the pointer has entered the area defined by the content display,"
> - "determin[ing] when the on-screen pointer leaves the defined area after each entry, by monitoring another event that indicates that the pointer has exited the area defined by the content display," and/or
> - "calculat[ing] the duration of time that the pointer was in the defined area for each entry into the defined area, as well as the total duration of time that the pointer was within the defined area" using "time stamps associated with the entry into and exit from the defined area."

Col. 16, ll. 24-50.

The specification explains that the foregoing example ("entry of a pointer into a defined area"), among others, is one example of a monitoring method in accordance with an embodiment of the invention wherein the "monitoring method monitors the change in time of a characteristic of the content display." Col. 16, l. 60 – Col. 17, l. 6. With this specific association of the specification sections set forth above and the element at issue, there can be no question that the identification of structure is correct. To the extent the Court construes the claim elements herein as means-plus-function elements, NetRatings' respectfully contends that its constructions should be adopted.

---

[6] In this and the other structure examples provided in this brief, the specific steps of the various methods are not required for each claim. Each example reflects one or more possible combinations of the algorithms disclosed in the specification. There are many such potential combinations disclosed in the specification of the '637 patent for each element (which makes specific recitation of every such combination impractical). Some of such combinations may be entirely distinct, and others might incorporate part of the examples provided, but then include other steps or methods disclosed in the specification. For instance, the specification also identifies a distinct method of "hiding of the content display" as being applicable to the instant element. *See, e.g.,* Col. 16, l. 60 – Col. 17, l. 6. A full recitation of the specification sections wherein the algorithms for the elements at issue may be found is set forth in NetRatings' portion of the SCCC.

  (b) **Claim 63 (row 12)*: "instructions for determining the duration of the display of the content"***

The base structure for "instructions for determining the duration of the display of the content" is the same as the preceding elements. An example of this element incorporating specific algorithms from the specification is:

> Computer code encoded on a computer readable medium, that, when executed by a computer system, performs the recited function using one or more methods of:
>
> - "determin[ing] ... the amount of time that the computer program for displaying the content executed, as indicated by time stamps--ascertainable, for example, using a method that exists as part of the Java language--associated with a predefined beginning and end of execution of the program."

Col. 13, ll. 51-58.

That this section of the specification corresponds to the element at issue is made plain in the specification text immediately preceding the quoted section, which states: "A monitoring method according to the invention can also determine the duration of the content display." Col. 13, ll. 50-52. This example is among many disclosed in the specification for this element. *See, e.g.,* Col. 16, ll. 13-50 (describing monitoring of events, including pointer entry and departure from an area of a display to "calculate the duration of time that the pointer was in the defined area for each entry into the defined area, as well as the total duration of time that the pointer was within the defined area").[7] *See* row 12, col. 2 of Table 2 for a complete listing of citations.

(c) **Claim 59 (rows 14 and 16): *"instructions for ascertaining the beginning of a display of content" and "instructions for ascertaining the end of a display of the content"***

Using the same base structural identification as with the other elements, an example structure identification for claim 59's "instructions for ascertaining the beginning of a display of content" and

[7] Note that in this example, the function of the element, "determining the duration of the display of the content," could be accomplished using either of the techniques, or both (*i.e.,* single entry durations or multiple entry duration).

"instructions for ascertaining the end of a display of the content" (which may conveniently be shown together) is:

> Computer code encoded on a computer readable medium, that, when executed by a computer system, performs the recited function using one or more methods of:
>
> - "obtain[ing] a time stamp (date and time of day) that indicates when the display of the content began. When the monitoring method is implemented by an applet written in Java, the time stamp can be obtained using a method that exists as part of the Java language."
> - "determine if the user of the computer at the content display site selected (e.g., clicked with a mouse or pressed an appropriate keyboard key) a hyperlink within the area of the content display to end display of the current content display."

Col. 17, ll. 8 - 13, 24 – 29 (emphasis supplied).

Notably, the computer code comprising a program could be "an applet" that "include[s] a standard Java method (e.g., HandleEvent) that accepts events transmitted by the operating system," but it does not have to be. *See, e.g.,* Col. 17, ll. 29-35. As with all of the other elements addressed herein, a full recitation of each specification section where an algorithm corresponding to this element is located may be seen in Table 2 of the Supplemental Claim Construction Chart.

(d) **Claims 57 and 62 (row 18): *"instructions for evaluating the change in time of the characteristic of the content display to produce monitoring information regarding display of the content"*; Claim 58 (row 21): *"instructions for comparing the change in time of the characteristic of the content display to the change in time of the characteristic of the computer system to produce the monitoring information"***

The instructions element of claims 57 and 62, "instructions for evaluating the change in time of the characteristic of the content display to produce monitoring information regarding display of the content," include the same base structure as the other instructions elements. An example of these elements, incorporating appropriate specification references is:

> Computer code encoded on a computer readable medium, that, when executed by a computer system, performs the recited function using one or more methods of:

- using "information provided by the operating system to count the number of times that the on-screen pointer enters the area defined by the content display"
- "determine when the on-screen pointer leaves the defined area after each entry, by monitoring another event that indicates that the pointer has exited the area defined by the content display."
- "The time stamps associated with the entry into and exit from the defined area can be used to calculate the duration of time that the pointer was in the defined area for each entry into the defined area, as well as the total duration of time that the pointer was within the defined area."

Col. 16, ll. 38-50.

The association between the above structure and the elements at issue from claims 57 and 62 is shown in Col. 16, ll. 60-62 and Col. 17, ll. 2-6 (explaining that the method is described in the immediately preceding section).

With respect to claim 58's element of "instructions for comparing the change in time of the characteristic of the content display to the change in time of the characteristic of the computer system to produce the monitoring information," the structure for this element includes, for example, the foregoing structural identification, coupled with "using the method to change the state of the computer (e.g., the state of the display) on which the content is being displayed and monitoring the response of the computer (e.g., the method for monitoring whether content display is hidden, discussed above)." *See, e.g.,* Col. 17, ll. 48-55.

(e) **Claim 65 (row 32): *"instructions, adapted for use at the content display site, for monitoring display of content at the content display site to produce monitoring information regarding display of the content"***

In the Briefing Order, the court indicated that "instructions for monitoring display of the content" in claim 59 was not viewed as calling for § 112(6) treatment. Although the above claim 65 element includes additional detail regarding the claimed instructions (that the instructions be "adapted for use at the content display site" and used for a particular purpose), the instructions aspect

of the element is identical to the claim 59 element. NetRatings accordingly presumes that the above element from claim 65 would be treated the same as the claim 59 element with respect to § 112(6) treatment. However, given the minor differences in the claim element language, to the extent the Court deemed that § 112(6) applies to the above element of claim 65, NetRatings' proposed construction is identified in the Supplemental Claim Construction Chart.

### 3. Instructions Element Within the Category of Transferring (and Receiving) Monitoring Information

Claim 65 (row 33) recites "instructions for receiving monitoring information from the content display site." The applicable structure for this element contains the same base as the other instruction elements. Two examples of the structure of this element incorporating specification citations are provided, the latter example illustrating an embodiment of the invention wherein the monitoring information is received in a specific format for storage purposes:

> Computer code encoded on a computer readable medium, that, when executed by a computer system, performs the recited function using one or more methods of:
>
> - "request for execution of a CGI script can be transmitted, with the parameter of the CGI script request that specifies input to the script being specified to denote the monitoring data in some way."
> - A computer program resident on the computer system at the remote site can then implement a method of "extract[ing a] value of the input from the CGI script [from the request that specifies input to the script to denote the monitoring data], and the monitoring data can be extracted from the value of the input."

Col. 20, l. 64 – Col. 21, l. 4.[8]

> Computer code encoded on a computer readable medium, that, when executed by a computer system, performs the recited function using one or more methods of:
>
> - "monitoring information will be recorded for each display of each of the multiple sets of content and transferred to the application manager

---

[8] Correspondence between this structural identification and the element is shown in Col. 21, ll. 4-6, wherein it refers to the quoted sections and then to "other methods" which are possible to transmit "monitoring data" to an "http daemon" which is referred to earlier as a program at a remote site, for example. *See* Col. 2, ll. 15-20.

site for storage in a database that is implemented on a computer at the application manager site"

- "Each set of monitoring information must be identified as corresponding to the set of content for which the monitoring information was obtained, so that monitoring information can be appropriately stored in a database to enable later retrieval of the monitoring information for that set of content."

- "specification of a parameter included in a computer program written in html used to implement a monitoring method" as in the Example provided:

```
<applet code="//AppMgr.com/AdInsert.class" width=230 height=33>
<param name="image" value="images/southwest.gif">
<param name="href" value="http://www.swa.com/">
<param name="Account" value="9004560093">
</applet>
```

Col. 22, l. 51 – Col. 23, l. 9.

The specification describes the foregoing example of one embodiment where "multiple sets of content will be provided from multiple content provider sites, and each set of content will be displayed by multiple content display sites," and then the monitoring information recorded as set forth in the first bullet in the above set.

**4. Instructions Element Within the Category of Display of Content**

Claim 64 of the '637 patent (row 30) contains the element of "instructions for causing content to be displayed by the computer system." NetRatings believes, based on the elements for which the Court did not order briefing (Briefing Order (n.3)), that this claim element should also be excepted. The Court excluded from its Briefing Order, "display instruction." The element "instructions for causing content to be displayed by the computer system" constitutes the antecedent basis for the "display instructions" of claim 64. Accordingly, the terms should be treated in a corresponding manner; if 35 U.S.C. 112(6) is not applicable to "display instruction," it should also be inapplicable to the instant element.

Should the Court determine 35 U.S.C. 112(6) applies to this element, NetRatings has provided a construction in the Supplemental Claim Construction Chart. The specification references include instructions for multiple methods of content displays, including for instance HTML (Col. 11, ll. 22-28), audio and video (Col. 11, ll. 18-22), applets (Col. 11, ll. 57-63), and hypertext files (Col. 11, ll. 25-27).

## CONCLUSION

For all the reasons stated above, NetRatings requests that the disputed claim terms be construed in the manner proposed by NetRatings in the Supplemental Claim Construction Chart.

Dated: August 9, 2006

Respectfully submitted,

*/s/ Karen E. Keller*
John W. Shaw (#3362)
Andrew A. Lundgren (#4429)
Karen E. Keller (#4489)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
(302) 571-6600
kkeller@ycst.com

Frederick L. Whitmer
Seth H. Ostrow
Arianna Frankl
**BROWN RAYSMAN MILLSTEIN FELDER & STEINER LLP**
900 Third Avenue
New York, New York 10022
(212) 895-2000

Attorneys for Plaintiff NetRatings, Inc.

936449

**CERTIFICATE OF SERVICE**

I, Karen E. Keller, hereby certify that on August 9, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such document is available for viewing and downloading to the following counsel of record:

Steven J. Balick, Esquire
John G. Day, Esquire
Tiffany G. Lydon, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801

I further certify that on August 9, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

**BY E-MAIL**

Nitin Subhedar, Esquire
Heller Ehrman LLP
275 Middlefield Rd.
Menlo Park, CA 94025

Matthew C. Lapple, Esquire
Heller Ehrman LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA 92122-1246

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Karen E. Keller*
Karen E. Keller (No. 4489)
kkeller@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
Telephone: (302) 571-6600