IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NETRATINGS, INC., ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Civil Action No.: 05-314-GMS | |
| ) | | |
| COREMETRICS, INC., ) | | |
| ) | | |
| Defendant. ) | | |
| ) | | |

**<u>COREMETRICS, INC.'S SUPPLEMENTAL ANSWERING MARKMAN BRIEF</u>**

*Of Counsel:*

Robert T. Haslam
Nitin Subhedar
Bhanu K. Sadasivan
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA 94025
Telephone: (650) 324-7000
Facsimile: (650) 324-0638

Matthew C. Lapple
HELLER EHRMAN LLP
4350 La Jolla Drive, 7th Floor
San Diego, CA 92121
Telephone: (858) 450-8400
Facsimile: (858) 450-8999

Dated: August 16, 2006

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Ave., 17th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant Coremetrics, Inc.*

I.  **INTRODUCTION**

NetRatings' supplemental claim constructions are fundamentally flawed and should be rejected. To construe a claim element under 35 U.S.C. 112(6), the Court must identify the function, then look to the patent specification to find the structure, if any, that corresponds to and is clearly linked to the performance of that claimed function. In computer software related claims such as the "instructions" terms that are the subject of this brief, the corresponding structure is the algorithm that is disclosed in the specification. Yet, as explained in prior briefing, the '637 patent does not disclose any algorithm to carry out the claimed functions. The patent is simply silent on how to turn the functional language of the claims into a usable computer program. At best, it discloses the use of an unexplained generic Java Applet and proposes a number of tasks that a Java Applet might be able to do, without explaining how it actually would do them. Try as it might, NetRatings cannot overcome this fatal omission in the '637 patent.

In analyzing NetRatings' submission, three key points should be kept in mind. First, NetRatings fails to adequately identify the corresponding structure for each of the "instructions for" claim elements that are governed by 35 U.S.C. 112(6). Rather, NetRatings' supplemental claim constructions take the same incorrect approach as NetRatings' original claim constructions for the other means-plus-function claim elements of the '637 patent -- listing a long series of specification cites -- and therefore suffer from all of the same deficiencies. The reason for this on-going failure is equally apparent -- the '637 patent specification does not describe any corresponding structure, other than the generic Java Applet.

Second, the new "35 U.S.C. 101" argument that NetRatings makes in an attempt to undo the Court's August 2, 2006 order is improper, because it has never been raised before. Further, it is unpersuasive because it confuses the different concepts of "structure" for a claim as a whole under 35 U.S.C. 101, on the one hand, and "structure" for an individual claim element under 35 U.S.C. 112(6), on the other.

Third, in its brief, NetRatings offers "examples" of how its supplemental claim constructions "would be analyzed" to create more precise claim constructions "for purposes of trial." By doing so, NetRatings implicitly acknowledges that the supplemental claim constructions that it submits in its claim

chart are unworkable and <u>not</u> ready "for purposes of trial," without further "analysis." For this reason alone, the Court should reject NetRatings' incorrect and incomplete supplemental claim constructions and instead adopt Coremetrics' proposed claim constructions for all of the "instructions for" elements.

## II. ARGUMENT

### A. NETRATINGS' SUPPLEMENTAL CLAIM CONSTRUCTIONS ARE AS FLAWED AS ITS OTHER PROPOSED MEANS-PLUS FUNCTION CLAIM CONSTRUCTIONS

NetRatings' supplemental claim constructions are just as flawed as its original claim constructions for the other means-plus-function elements in the '637 patent. To construe means-plus-function claims, the Court must first identify the function contained in the means-plus-function limitation. *JVW Enter., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005). Then, the Court must look to find the corresponding structure, if any, disclosed in the specification as being clearly linked to performance of the claimed function. *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002). When construing a 112(6) claim element for a computer-implemented function, the corresponding structure is the algorithm disclosed in the specification. *WMS Gaming, Inc. v. International Game Technology*, 184 F.3d 1339, 1348-49 (Fed. Cir. 1999); *Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005). As explained in Coremetrics' earlier briefs, this analysis leads to the inescapable conclusion that the '637 patent does not disclose and link corresponding structure to the 112(6) claim elements, except, perhaps, to indicate that these functions must be performed by an unexplained generic Java Applet.

NetRatings' supplemental claim constructions fail in at least two ways: (a) in a manner similar to its original "means-plus-function" claim constructions, NetRatings' supplemental constructions do little more than state a general boilerplate introduction that invites the Court and jury to wade through long, string-cited sections of the specification in order to hunt for hints of "corresponding structure;" and (b) NetRatings fails to identify any actual structure that corresponds to the functional "instructions" claim elements, *i.e.*, NetRatings does not point to an algorithm set forth in the patent specification that illustrates how each function is to be performed <u>because there is no such disclosed algorithm</u>. Many of

2

the supplemental claim constructions now offered by NetRatings are string cites to the patent specification that are very similar to those NetRatings earlier offered for similar mean-plus-function claim elements. Yet, an examination of the cited passages reveals that they disclose no algorithm and no actual structure, except perhaps an unexplained generic Java Applet. For example, NetRatings cites the following portion of the specification as allegedly identifying structure for nearly every "instructions" element:

> In yet another aspect of the invention, where content is provided by a content provider site over a network to a content display site for display at the content display site, a mechanism for monitoring the display of the content can be transferred from the content provider site to the content display site in response to (e.g., together with) the transfer of content from the content provider site.
> (Col. 7, ln. 66 – Col. 8, ln. 5; cited by NetRatings as "structure" for elements 2, 4, 6, 12, 14, 16, 18, 21, 32, and 33)

While this quote indicates that "a mechanism" can be sent from one computer to another, it is silent on what that "mechanism" is or what algorithm or instructions comprise that "mechanism." As such, this passage does not identify any corresponding structure at all.

Another cite given by NetRatings is similarly deficient:

> A monitoring method that detects the display of the content can be implemented by an applet as described above. The 'monitoring instructions' of such an applet may be no more than an instruction that causes an indication that the applet has executed to be stored or transferred to an appropriate network site (discussed further below).
> (Col. 13, ln. 35-40; cited by NetRatings as "structure" for elements 2, 4, 6, 12, 14, 16, 18, 21, and 32).

At best, this section from the specification merely suggests that the "monitoring instructions" may be an "instruction" that achieves a particular result. Nothing in this passage describes the algorithm to be used to achieve this function, nor is there any other indication of how the function should – or even can – be achieved, *e.g.*, steps to take, the order in which to take them, or other details necessary to implement the inventor's desire. In fact, neither this quote nor any other part of the '637 patent ever even attempts to identify, by name or otherwise, the abstract "instruction" that is being referred to in this passage.

NetRatings also appears to be proceeding under the theory that the more parts of the specification it identifies as describing alleged structure, the more likely it is that this Court will find that there actually

3

is some corresponding structure disclosed somewhere in the patent. For example, one of NetRatings' string citations is to four full columns of the '637 patent. Specifically, in all but two of the supplemental constructions, NetRatings cites the text from Column 14, line 1 to Column 18, line 10 as "corresponding structure." While in some circumstances it might be appropriate to identify a limited specification passage as the structure that corresponds to a 112(6) claim element and then include that passage in the claim construction itself, including column after column of specification cannot possibly be proper. Indeed, what NetRatings is effectively advocating is that the Court abstain from identifying any corresponding structure for these elements at all, and instead leave the jury to its own devices to hunt through broad swaths of the patent to identify and select, corresponding structure for itself. This approach is clearly erroneous.

Finally, the two unpublished cases that NetRatings cites as allowing unexplained specification cites or unexplained patent figures to serve as an identification of structure for claim construction purposes are easily distinguished. NetRatings cites the unpublished case of *Diego, Inc. v. Audible, Inc.*, C05-464JLR, 2006 U.S. Dist. LEXIS 22715, (W.D. Wash. Marc. 27, 2006) because that court allowed about one column of text from a patent specification to be designated as the corresponding structure for a means-plus-function claim element. There, however, the one column of disclosure provided a detailed and specific algorithm to encrypt information by dynamically shifting the letters of the alphabet against a series of numbers. In other words, the cited column of text provided an understandable and easily followed algorithm and described a single aspect of the claimed invention, corresponding to a single means-plus-function claim element.

If the many columns from the '637 patent that NetRatings cites as corresponding structure contained lines of code, or detailed algorithms, or clear step-by-step directions on how to implement a structure for achieving the functions set forth in the claims, then perhaps the *Diego* case would have some pertinence. However, that is not the case. The '637 specification does not disclose any such code, algorithm or step-by-step directions at all, so NetRatings has resorted to designating huge sections of the

patent in the hope that the jury will assume there is corresponding structure.[1] Having the jury undertake this scavenger hunt is not only procedurally improper, but it will lead to complete confusion at trial and in the jury room.

NetRatings also cites to the unpublished case of *Board of Regents of the Univ. of Texas Sys. v. Eastman Kodak Co.*, Civ. Action No.: SA-04-CA-912-XR, 2006 U.S. Dist. LEXIS 7997 (W.D. Tex. Jan. 26, 2006), for the proposition that an algorithm can be identified by citation to two patent figures. But, NetRatings fails to explain that the two patent figures identified by the court in that case are flow charts that show a set of steps that the claimed software carried out. (See Attached Exhibit A for the figures referenced in the *Board of Regents* opinion). For example, the patent figures from *Board of Regents* show where the software should "start" and "end," as well as a number of specific actions that the software should perform between the beginning and ending of the programs. Thus, in that particular case, allowing a patent figure to serve as the corresponding structure for a claim construction might be appropriate. In contrast, no such flowchart figure, showing the logical flow of the claimed software, exists in the '637 patent. The '637 patent figures cited by NetRatings (Figs. 3B, 5C and 6D) do nothing to demonstrate how the "monitoring instructions" are supposed to carry out their task of monitoring. Instead, these figures only show how the "monitoring instructions" can be transferred to the user's computer. As such, *Board of Regents* is inapposite.

The reason for the hopelessly flawed claim construction method advocated by NetRatings is easily understood. NetRatings cannot point to an algorithm that is disclosed in the '637 patent specification and clearly linked to the functional claim elements. It cannot do so because there is no such algorithm in the '637 patent. Accordingly, NetRatings' supplemental claim constructions should be rejected.

---

[1] Moreover, in further contrast to *Diego*, NetRatings wants to use a string cite to the specification to identify the corresponding structure for <u>all</u> of the many different means-plus-function elements in the '637 claims, not just for a single means-plus-function claim element.

### B. NETRATINGS' NEW ARGUMENT BASED ON 35 U.S.C. 101 AND THE TERM "COMPUTER READABLE MEDIA" IS MISPLACED

In its Supplemental Brief, NetRatings makes a new argument for why the "instructions" claims should not be governed by 35 U.S.C. 112(6), based on 35 U.S.C. 101 and the term "computer readable media." (NetRatings Suppl. Brief, p. 1-2). In summary, NetRatings argues that, under 35 U.S.C. 101, the fact that the preamble of these claims recite "computer readable media" that is encoded with computer programs, allegedly makes the entire claim structural, rather than functional.[2] This new argument is misplaced and must be rejected for at least two reasons.

First, in making this argument, NetRatings appears to be conflating two very different questions: (1) whether a claim involving a computer-related invention, <u>as a whole</u>, recites enough structure to avoid a rejection that it is non-statutory subject matter under 35 U.S.C. 101; and (2) whether <u>an individual claim element</u> describes sufficient structure to avoid treatment as a means-plus-function claim element under 35 U.S.C. 112(6). There is no question that, under 35 U.S.C. 101, an invention is patentable only if it covers a process, machine, manufacture or composition of matter (or improvements thereof). But the fact that there might be enough structure recited in the preamble of a claim to qualify it as patentable subject matter under 35 U.S.C. 101 does not automatically suggest that each of the individual means-plus-function <u>claim elements</u> recite structure and are no longer subject to 35 U.S.C. 112(6).

This point is amply demonstrated by the very *Examination Guidelines* that NetRatings relies upon in its brief. Those *Guidelines* offer the following example of a "computer system" claim that – as a whole

---

[2] NetRatings did not make this 35 U.S.C. 101 argument in either its Opening Claim Construction Brief or its Answering Claim Construction Brief and therefore should be barred from doing so here. NetRatings' suggestion, in footnote 2, that it made this argument in its Opening Claim Construction Brief is inaccurate and misleading. The pages of its Opening Brief that NetRatings cites do not include a single citation to 35 U.S.C. 101, the *Examination Guidelines for Computer-Related Inventions*, 61 Fed. Reg. 7478, or any case purporting to rely upon or construe either of these sources.

Further, NetRatings' new argument on this point also appears to be a disguised request for reconsideration of the Court's August 2, 2006 decision that most of the '637 "instructions for" claim elements are governed by 35 U.S.C. 112(6). As such, this new argument appears to flout the Court's warning that it will not accept additional briefing on the issue of which terms are, or are not, governed by 35 U.S.C. 112(6). (Order, fn. 3.) Because NetRatings has raised this new argument, however; Coremetrics feels obligated to respond briefly for fear of being deemed to have waived its right to respond at a later time.

6

– discloses sufficient structure to qualify as patentable subject matter under 35 U.S.C. 101:

> A computer system for determining the three dimensional structure of a chemical compound comprising:
>
> (a) Means for determining the three dimensional structure of a compound; and
>
> (b) Means for creating and displaying an image representing a three dimensional perspective of the compound.
> (61 Fed. Reg. 7478, 7483 (1996))

That said, the *Examination Guidelines* do not even hint at the novel proposition that, because this claim satisfies the "structure" requirement for 35 U.S.C. 101, it necessarily overcomes the presumption that 35 U.S.C. 112(6) applies in light of the use of the word "means." Nor would such a concept make sense logically. After all, every claim – including those that the patentee itself intends to be governed by 35 U.S.C. 112(6) – must meet the requirements of 35 U.S.C. 101. If meeting 35 U.S.C. 101 automatically precludes application of 35 U.S.C. 112(6), the latter would become impossible to invoke. Not surprisingly, NetRatings does not cite any case law to support its untenable argument.

Second, merely stating that the "instructions for" elements must be saved onto a computer readable medium -- while in and of itself correct -- does not provide the Court (or the jury) any better understanding of what, exactly, NetRatings thinks needs to be saved on to that computer readable medium to infringe the "instructions for" claims of the '637 patent. As explained above, NetRatings has not pointed to any specific structure described in the specification as corresponding to any of the "instructions for" claim elements. NetRatings should not be permitted to divert attention away from this fundamental fact by suggesting that the structure-less "instructions" must be saved on a computer readable medium. This point can be demonstrated by a simple hypothetical claim, written in the format used by the '637 "instructions" claims, for a computer program to aid the preparation of legal briefs:

> A computer readable medium encoded with one or more computer programs for assisting in the preparation of legal briefs by a computer, comprising:
>
> instructions for determining all applicable case facts; and
>
> instructions for determining all applicable legal precedent.

7

There is no doubt that the computer program of the hypothetical claim above is intended to be saved to a "computer readable medium." But that fact, by itself, does little to illustrate what the claimed instructions actually are. NetRatings' method of claim construction would overlook this point and have the claim construction give the hypothetical patentee ownership of all of the infinite instructions that could enable a computer to determine applicable case facts, so long as coupled with any one of the infinite instructions that could enable a computer to determine applicable case law. This is improper.

Instead, to determine what the corresponding structure for these "instructions" terms are, a court would need to look to the hypothetical patent specification to review the steps and methodologies set forth describing how to program a computer to determine, for example, what the applicable case facts are. This would presumably include a description of the kinds of computer code, names of instructions, subroutines, and steps necessary to carry out this functional language, *i.e.*, the algorithm for satisfying the functional language. The same reasoning applies to the '637 patent. Accordingly, the Court should reject NetRatings' supplemental claim construction proposals.

### C. NETRATINGS' "EXAMPLES" OF HOW ITS CLAIM CONSTRUCTIONS WOULD BE ANALYZED "FOR PURPOSES OF TRIAL" SHOW THAT THE SUPPLEMENTAL CLAIM CONSTRUCTIONS ARE UNWORKABLE

Throughout its brief, NetRatings provides "example structure identifications." According to NetRatings, these serve:

> To illustrate precisely how the structure for each element <u>would be analyzed (for purposes of trial, for instance)</u> (NR Suppl. Brief, p.4)(emphasis added).

Even if these scattered "example structure identifications" actually disclosed a corresponding structure (which they do not, for the reasons set forth above), the important point is this: NetRatings essentially admits that its supplemental claim constructions are inadequate, because they will each require additional analysis before they will be useful "for purposes of trial."

Moreover, each of NetRatings' "example structure identifications" quotes or slightly re-words some portion of the numerous lengthy specification passages citations that NetRatings cites as

"corresponding structure." Yet, not a single one of these "example structure identifications" uses all, or even most, of the cited passages.[3] Not only does this demonstrate that NetRatings has designated completely irrelevant and superfluous passages, it also proves that NetRatings believes that there is some additional "analysis" that will need to be carried out by the Court or jury, at some point in the future, in order to make its proposed supplemental claim constructions ready "for purposes of trial."[4] Notably, NetRatings' brief does not explain how or when to do this additional analysis, or why – if such additional analysis is necessary "for purposes of trial," NetRatings did not perform and submit this analysis for all of the "instructions" element listed on its supplemental claim chart.

Further, NetRatings acknowledges that, in some cases at least, its proposed supplemental claim constructions can be used to construct more than one different "example structure identification":

> Two examples of the structure of this element incorporating specification citations are provided, the latter example illustrating an embodiment of the invention wherein the monitoring information is received in a specific format for storage purposes (NetRatings' Suppl. Brief, p.8).

Again, NetRatings' brief is silent as to how the Court (or jury) is supposed to decide which "instructions" elements should get multiple "example structure identifications" and which should not, or how precisely the Court or jury should determine how to construct multiple "example structure identifications." Simply put, if the Court adopts NetRatings' supplemental claim constructions, the claim construction process is not over – it will continue, in some unknown fashion at some unknown time, in order to prepare those constructions "for purposes of trial." That is not what the Court has asked for, nor is it an appropriate way to construe the patents in this case. NetRatings' "examples" strongly point out why NetRatings' entire claim construction proposal for all of the '637 terms governed by 35 U.S.C.

---

[3] Compare, for example, the example structure identification that NetRatings provides on page 4 of its brief for the term "instructions for monitoring the change in time of a characteristic of a content display" with NetRatings' supplemental claim construction entry for the same term on row 2 of its attached claim chart.

[4] Presumably, this same "analysis" would be necessary to prepare all of the NetRatings' means-plus-function claim constructions that use the specification string cite format, not just the "instructions" claim elements that are the subject of this briefing.

§ 112(6) is untenable and improper. NetRatings' position should be rejected and the constructions advanced by Coremetrics should be adopted.

## III. CONCLUSION

Based on the arguments and evidence provided above, in Coremetrics' Opening Markman Brief, Answering Markman Brief, and in the JCCC, Coremetrics respectfully requests that the Court adopt Coremetrics' proposed claim constructions for the "instructions for" terms that are subject to 35 U.S.C. § 112(6).

                                                      ASHBY & GEDDES

                                                      */s/ Tiffany Geyer Lydon*

| *Of Counsel:* | Steven J. Balick (I.D. #2114) |
| --- | --- |
| | John G. Day (I.D. #2403) |
| Robert T. Haslam | Tiffany Geyer Lydon (I.D. #3950) |
| Nitin Subhedar | 222 Delaware Ave., 17th Floor |
| Bhanu K. Sadasivan | P.O. Box 1150 |
| HELLER EHRMAN LLP | Wilmington, DE 19899 |
| 275 Middlefield Road | Telephone: (302) 654-1888 |
| Menlo Park, CA 94025 | Facsimile: (302) 654-2067 |
| Telephone: (650) 324-7000 | sbalick@ashby-geddes.com |
| Facsimile: (650) 324-0638 | jday@ashby-geddes.com |
| | tlydon@ashby-geddes.com |
| Matthew C. Lapple | |
| HELLER EHRMAN LLP | *Attorneys for Defendant Coremetrics, Inc.* |
| 4350 La Jolla Drive, 7th Floor | |
| San Diego, CA 92121 | |
| Telephone: (858) 450-8400 | |
| Facsimile: (858) 450-8999 | |

Dated: August 16, 2006
172222.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of August, 2006, the attached **COREMETRICS, INC.'S SUPPLEMENTAL ANSWERING MARKMAN BRIEF** was served upon the below-named defendants at the address and in the manner indicated:

| | |
|---|---|
| John W. Shaw, Esquire<br>Young Conaway Stargatt & Taylor<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE 19801 | **HAND DELIVERY** |
| Frederick L. Whitmer, Esquire<br>Brown Raysman Millstein Felder & Steiner LLP<br>900 Third Avenue<br>New York, NY 10022 | **VIA ELECTRONIC MAIL** |

*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon

# EXHIBIT A

U.S. Patent    Jan. 12, 1993    Sheet 4 of 5    5,179,579



Fig. 4A    Fig. 4B